UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE ROBERT D. STEWART
COMPANY,

     Plaintiff,

v.

FIRST BRAND GROUPS, LLC and
HORIZON GLOBAL AMERICAS
INC.,

     Defendants.

Case No. 2:23-cv-11765
HON. STEPHEN J. MURPHY, III

_____/

## DISCOVERY MASTER'S REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S RENEWED MOTION TO COMPEL DISCOVERY AND SUPPLEMENTAL PLEADINGS, DEFENDANTS' RELATED RESPONSES, AND OTHER OPEN DISCOVERY ISSUES

### INTRODUCTION

Plaintiff filed a renewed motion to compel discovery to which Defendants responded ("Motion") [ECF 39, 40]. In addition, there are other discovery issues that arose after the undersigned was appointed by the Court that are addressed in this Report and Recommendation. The Court, on November 25, 2024, appointed the undersigned to serve as discovery master to assist in the resolution of the Motion and any other open discovery issue(s) [ECF 43], which appointment became effective on November 26, 2024 [ECF 46].

## BACKGROUND

### A.    Relevant Procedural History

The facts of the underlying case are succinctly summarized as follows. Plaintiff alleges it served as the exclusive sales representative, pursuant to a written contract, for defendant Horizon Global Americas, Inc. ("HGA") since 1998 and solicited orders on HGA's behalf. Defendant First Brands Groups, LLC acquired HGA in February, 2023. Plaintiff claims that, under the parties' agreement, HGA was required to make monthly commission payments to Plaintiff and provide Plaintiff with monthly sales reports. Plaintiff contends that Defendants unlawfully and prematurely terminated the agreement and, after termination, Plaintiff alleges it received late partial payments but has not been paid in full according to the parties' contract. Plaintiff's Second Amended Complaint includes claims for breach of contract, violation of the Michigan Sales Representative Commission Act, tortious interference with contract, and request for declaratory judgment. Defendants deny all wrongdoing.

Plaintiff served Defendants with its First Request for Production of Documents on October 4, 2023, and Defendants served their Responses on November 10, 2023 [ECF 39]. Defendants did not produce any documents at that time. *Id.* Defendants then made document productions in January and March of 2024. *Id.* After Defendants made their last production in March 2024, Plaintiff moved to compel Defendants to produce documents responsive to its requests on

2

August 28, 2024. *Id*. The parties then met and conferred upon the Court's order in September 2024. *Id*. But after Defendants failed to produce additional documents responsive to Plaintiff's requests, Plaintiff renewed its motion. *Id*.

**B.     The Court's November 25, 2024 Order [ECF 43]**

The Court's November 25, 2024 Order Appointing a Discovery Master and Granting in Part Renewed Motion to Compel [ECF 43] helps frame the Motion and the remaining open items. The Court appointed the undersigned to specifically address Plaintiff's requests for production 1–3 because "the Court acknowledges that requests for production 1–3 are complex and may ultimately require a protective order" [ECF 43 PgID 860]. The Court addressed and ruled on the remaining issues raised in the Motion. *See generally* ECF 43.

**C.     Efforts to Resolve the Issues Raised in the Motion [ECF 39]**

The Court was accurate in its assessment regarding the complexity of the issues involved.

On December 5, 2024, counsel for Plaintiff and Defendants met with the undersigned via Zoom to discuss the status of discovery, the open issues, and next steps related to Plaintiff's pending discovery requests in line with this Court's Order on the Motion [ECF 43]. As part of that effort counsel provided, at the undersigned's request, the prior discovery-related filings and submissions for review and consideration.

3

In an attempt to comply with the Court's Order and in furtherance of the parties' efforts to resolve the outstanding issues voluntarily and by agreement, on December 9, 2024, Defendants produced an additional 382 documents to Plaintiff. The next day, Defendants provided contact information for two additional witnesses that Plaintiff previously requested for potential depositions. In the subsequent weeks, counsel for the parties continued their communication in an effort to resolve the open issues, keeping the undersigned apprised throughout regarding supplemental document productions and the remaining information requested.

Unable to reach a complete resolution of all open items, counsel for the parties and the undersigned reconvened via Zoom on January 16, 2025. The result of this meeting, pursuant to the undersigned's interim and informal recommendation, was two-fold: (1) the parties determined additional time was required to meet the full extent of Plaintiff's outstanding discovery requests so the parties submitted to the Court a Stipulation to Extend Deadlines, which was rendered moot by the Court's Order granting Plaintiff leave to file its Second Amended Complaint. The Court then ordered the parties to submit a Revised Case Schedule [ECF 50], which they did [ECF 52]; and (2) Defendants supplemented their document production in the form of three sets of Excel spreadsheets, containing over 15,000 pieces of data.

Next, on February 11, 2025, Plaintiff requested that Defendants produce the following records requested by Plaintiff's First Request for Production of

4

Documents dated October 4, 2023, and Second Request for Production of Documents served October 25, 2024:

- OEM purchase orders on sales from 3/15/23 to present (first request for production #1);

- Invoices to OEM customers on sales from 3/15/23 to present (first request for production #2);

- Monthly payment remittance reports received from OEM customers on sales from 3/15/23 to present (Plaintiff's second request for production #5, served 12/9/24); and

- Financial statements for the time period 1/1/22 through 12/31/24 (Plaintiff's second request for production #s 1-2, served 12/9/24).

On February 19, 2025, Defendants supplemented their production that included an additional shared folder with another set of voluminous documentation, consisting of numerous zip files and subfiles. On February 27, 2025, Plaintiff's counsel advised that the supplemental production would be reviewed by Plaintiff to determine whether it was responsive to the outstanding document requests identified above.

On March 4, 2025, the parties' counsel and the undersigned again reconvened via Zoom to determine whether progress had been made, whether the outstanding issues had been resolved, or whether the undersigned needed to issue a formal report and recommendation to the Court. While some of the initial issues of dispute had been resolved, others arose during the process and, ultimately, no agreement was voluntarily reached among the parties.

To that end, the undersigned requested Plaintiff and Defendants submit written submissions to crystalize the remaining issues, which in part morphed beyond the initial scope of the Court's order but for which the undersigned has been given the authority to "supervise and manage" [ECF 43 PgID 864-865].

The parties submitted the following pleadings to the undersigned that are attached as exhibits to this Report and Recommendation [ECF 43 PgID 865]:

- Plaintiff's Summary Report to Special Master re: Outstanding Document Production (with accompanying exhibits) dated April 28, 2025 (**Exhibit 1**);

- Defendants' Response to Plaintiff's Summary Report to Special Master (with accompanying exhibits) dated May 5, 2025 (**Exhibit 2**); and

- Plaintiff's Reply to Defendants' Response to Plaintiff's Summary Report to Special Master (with accompanying exhibits) dated May 9, 2025 (**Exhibit 3**).

These pleadings shaped the remaining items and are the subject of this Report and Recommendation to the Court:

- OEM purchase orders on sales from 3/15/23 to present (first request for production #1);

- Monthly payment remittance reports received from OEM customers on sales from 3/15/23 to present (Plaintiff's second request for production #5, served 12/9/24); and

- Financial statements for the time period 1/1/22 through 12/31/24 (Plaintiff's second request for production #s 1-2, served 12/9/24).

## DISCUSSION

### Legal Standard

The scope of discovery available to parties in a civil action is outlined in Federal Rule of Civil Procedure 26. As a general matter, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Discovery is not permitted when it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive [or] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i-ii).

Discovery is further prohibited when its burden or expense outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(iii). When any of these circumstances arise, the court must limit discovery "[o]n motion or on its own." Fed. R. Civ. P. 26(b)(2)(C).

### OEM purchase orders and monthly payment remittance reports from March 15, 2023 to the present; financial statements for the period January 1, 2022 through December 31, 2024

**Plaintiff's Position**: On February 19, 2025, Defendants produced several zip files with numerous subfiles. Although the production included the requested invoices issued to OEM customers, it did not include any purchase orders or any

7

payment remittance records from the majority of the OEM customers, with the exception of payment remittance records for Mazda and Nissan. Those invoices documented sales to customers for the period March 16, 2023, through December 31, 2024, in the amount of $105,921,389, and total commissions due on such sales in the amount of $1,737,774.20. Each invoice identified a corresponding OEM customer purchase order number.

On April 2, 2025, and April 11, 2025, Defendants produced folders containing "additional payment information that my client was able to access from the Horizon system" and additional emails. The payment remittance records produced on those dates were incomplete because the largest three OEM customers (FCA, Nissan, and Toyota) had payment remittance records missing. There was missing payment remittance data for all customers except Warren Distribution (a minor customer), and the limited payment remittance data that was produced was approximately $95.5 million less than the invoiced sales based on the invoices produced. Hence, Defendants failed to provide the requested information and/or the information that was produced was incomplete.

**Defendants' Response**: Defendants argue that since Defendant First Brands Group, LLC merged with HGA, data transfer and management changes have occurred. In the restructuring process, the location of the information requested became more challenging to find and produce but Defendants have continued to sort

8

through, review, and produce relevant documents, albeit a process that has been unduly burdensome.

Defendants further argue they have produced all available invoices, purchase orders, and remittance payments that have been made accessible through the available technology. While Defendants' representative Mr. Salvia testified at deposition that he relied on Excel spreadsheets Defendants produced on January 24, 2025 to calculate the sales and commissions attributed to programs previously associated with Plaintiff, Defendants are unable to retrieve documentation because it is not stored and saved within their possession. In short, Defendants contend they have provided all responsive information available to them. Accordingly, Defendants request the undersigned recommend the denial of any additional production to the extent such recommendation would be rendered moot by Defendants' inability to produce documents they do not have.

**Plaintiff's Reply**: Defendants do not identify which records they have not "saved" or "stored" due to purported technology issues. Mr. Salvia testified that Defendants have monthly accounts receivable reports maintained in the ordinary course of business that should be produced. The remaining unproduced purchase orders, payment remittance, financial statements and accounts receivable report records are within the proper scope of discovery such that the undersigned should recommend to the Court that Defendants must identify which records have not been

9

"saved" and "stored." Plaintiff further argues this Court should order an evidentiary hearing related to Defendants' alleged failure to properly preserve records.

**Discovery Master's Recommendation**: It is the undersigned's opinion that the records requested by Plaintiff are relevant to the issues and are proportional to the needs of this case considering, among other items, the importance of issues at stake and the amount in controversy. Hence, Defendants should be required to respond and/or supplement their production to comply with the above request for production of documents. Fed. R. Civ. P. 26(b)(1).

The requested information is relevant to determining whether Plaintiff has any damages and the amount of the damages, if any. The undersigned is aware there are pending cross-motions for summary judgment and this Report and Recommendation takes no position on whether there is a question of fact on the issue of liability on the claims set forth in Plaintiff's Second Amended Complaint.

With respect to Plaintiff's claim that Defendants failed to preserve relevant evidence in anticipation of and during litigation, the record evidence available to the undersigned is insufficient to make such a recommendation to the Court at this time without further information and evidence to support such contention.[1]

---

[1]   It is important to note that nothing contained in this Report and Recommendation related to this issue is intended to implicate or accuse Defendants' current counsel of any impropriety of wrongdoing; indeed, the opposite is the case. Defendants' current counsel and their firm are excellent attorneys with sterling reputations and, in the undersigned's view, have been as forthcoming as possible during this process.

Federal Rule of Civil Procedure 37(e) provides a framework to make such a finding:

(E)   **Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1)   upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

> (2)   only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

>> (A)   presume that the lost information was unfavorable to the party;

>> (B)   instruct the jury that it may or must presume the information was unfavorable to the party; or

>> (C)   dismiss the action or enter a default judgment.

Sanctions under Fed. R. Civ. P. 37(e)(1) are only available if the moving party experienced prejudice because of a non-remediable loss. "Prejudice" can be "properly understood as a party's ability to obtain the proofs necessary for its case. . . . which is another way of saying the loss of ESI could negatively impact a party's ability to make its case, or prejudice that party because of the loss of information." *Konica Minolta Bus. Sols., U.S.A. Inc. v. Lowery Corp.*, 2016 WL 4537847, *3 (E.D. Mich. Aug. 31, 2016).

Rule 37(e)(1)

> does not place a burden of proving or disproving prejudice on one party or the other. Determining the content of lost information may be a difficult task in some cases and placing the burden of proving prejudice on the party that did not lose the information may be unfair. In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Requiring the party seeking curative measures to prove prejudice may be reasonable in such situations. The rule leaves judges with discretion to determine how best to assess prejudice in particular cases.

2015 Advisory Comm. Notes. Upon a finding of prejudice, the court may employ curative measures but is not authorized to order measures greater than necessary to cure prejudice. *Id.*

To demonstrate the proprietary of sanctions under Fed. R. Civ. P. 37(e)(2), the movant need not show prejudice; however, the court needs to find intent to deprive. *Id.* ("Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position. Subdivision (e)(2) does not require any further finding of prejudice.").

To show intent, the movant must show ESI was lost due to more than negligence or gross negligence. *Id.*; *see also Applebaum v. Target Corp.*, 831 F.3d

12

740, 745 (6th Cir. 2016) ("A showing of negligence or even gross negligence will not do the trick.  [Plaintiff] would not have been able to show any degree of fault for Target's alleged destruction of records, because she cannot show that Target destroyed the records—if they even existed in the first place—after it was put  on notice of litigation."). This "intent standard is stringent and does not parallel other discovery standards." *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 773 (E.D. Mich. 2019) (internal quotation marks and citations omitted).  In evaluating a party's intent, "[c]ourts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." *Id.* (citing to the 2015 Advisory Comm. Notes).

The threshold factors to consider for the application of Rule 37(e) are whether: (i) ESI that should have been preserved in the anticipation or conduct of litigation (ii) is lost because a party failed to take reasonable steps to preserve it, and (iii) it cannot be restored or replaced through additional discovery.  Upon a finding that these elements exist, the Court should then proceed to an evaluation of prejudice under Rule 37(e)(1), an evaluation of intent to deprive under Rule 37(e)(2), and the appropriateness of a sanction, if any.

There is no information in the current record to enable the undersigned to make any such determination or recommendation to the Court on this issue at this time. However, based on Mr. Salvia's deposition testimony that he was able to review, analyze, and create an "ad hoc" sales report based on Defendants' internal sales

records from their Vision software reporting tool and their Enterprise Resource Planning ("ERP") system in preparation for his deposition testimony, it begs the question why the relevant information has not been produced by Defendants or, alternatively, if that information is no longer available, why it is not.

## CONCLUSION

For the reasons detailed above, the undersigned makes the following recommendations to the Court pursuant to the authority provided by this Court's Order Appointing Discovery Master [ECF 43]:

1. The Court GRANT Plaintiff's Renewed Motion to Compel Discovery as related to requests for production 1-3 and produce the documents and information discussed above.

2. ORDER Defendants to identify, preserve, and refrain from deleting, damaging, or altering in any way any of their ESI related to the categories of documents requested by Plaintiff in requests 1-3, which are the subject of this Report and Recommendation, from March 15, 2023 to the present.

3. ORDER Defendants to identify all ESI and other documents or records that no longer are available, identify which documents have not been "saved" or "stored" and, if that is the case, identify why and when such information no longer is in Defendants' possession, custody, and control.

4. At this time, DENY WITHOUT PREJUDICE the parties' requests for an award of attorneys' fees and costs, with each party to bear their own attorneys'

14

fees and costs related to the issues addressed in this Report and Recommendation; provided, however, Plaintiff's request may be subject to a renewed motion if it is established Defendants failed to maintain steps to preserve relevant records and information, including a claim for redistribution of the undersigned's costs and fees that, under the Court's Order, are to be split evenly subject to redistribution by the Court [ECF 43].

Under Fed. R. Civ. P. 53(f)(2) and this Court's Order [ECF 43], unless the Court sets a different time, the parties may file objections to this Report and Recommendation no later than twenty-one (21) days after a copy is filed on the Court's docket. Responses to any objections must be filed no later than twenty-one (21) days after the objections are filed on the Court's docket. Failure to timely object to the Discovery Master's ruling is a permanent waiver of any objection to this Report and Recommendation such that they are deemed approved, accepted, and ordered by this Court.

Respectfully submitted,

FRASCO CAPONIGRO WINEMAN
SCHEIBLE HAUSER & LUTTMANN, PLLC

By: */s/ Eric Scheible*
　　 Eric Scheible (P54174)
　　 Discovery Master
　　 1301 W. Long Lake Road, Suite 250
　　 Troy, Michigan 48098
　　 (248) 334-6767
　　 es@frascap.com

Dated: August 29, 2025

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2025 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Eric Scheible*

16

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE ROBERT D. STEWART COMPANY
d/b/a THE STEWART COMPANY,
a California corporation,

        Plaintiff,

v.

FIRST BRANDS GROUP, LLC,
a Delaware limited liability company, and
HORIZON GLOBAL AMERICAS INC.,
a Delaware corporation

        Defendants.

Case No.: 23- cv-11765
Hon. Stephen J. Murphy, III
Magistrate Judge Elizabeth A. Stafford

---

STROBL PLLC
Henry J. Andries, Jr. (P53669)
Michael L. Geller (P42862)
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 125
Bloomfield Hills, MI 48304
(248) 540-2300
handries@strobllaw.com
mgeller@strobllaw.com

THE ALLEN LAW GROUP
Natasha Rao (P85102)
Monica Hunt (P68838)
Attorneys for Defendants
3031 W. Grand Blvd.
Detroit, MI 48202-3046
Telephone: (313) 961-0200
nrao@alglawpc.com
mhunt@alglawpc.com

---

To:  Eric Scheible, Special Master
     Counsel of Record

**PLAINTIFF'S SUMMARY REPORT TO SPECIAL MASTER
RE: OUTSTANDING DOCUMENT PRODUCTION**

1

The remaining outstanding document production consists of the following unproduced records in response to Plaintiff's First Requests for Production of Documents served October 4, 2023, and Second Requests for Production of Documents served December 9, 2024:

- OEM Purchase orders on sales from 3/15/23 to present (Plaintiff's first request for production #1);

- Monthly payment remittance records received from OEM customers on sales from 3/15/23 to present (Plaintiff's second request for production #5); and

- Financial statements for the time period 1/1/22 through 12/31/24 (Plaintiff's second request for production #s 1-2).

On February 11, 2025, Plaintiff again requested the production of such records, in addition to requested invoices to customers for the same time period, via email to the special master and opposing counsel. (Exhibit A, 2/11/25 email). On February 19, 2025, Defendants produced a number of zip files with numerous subfiles. Although the production included requested invoices to OEM customers, it did not include any purchase orders and any payment remittance records from almost all of the OEM customers, with the exception of payment remittance records for Mazda and Nissan. (Exhibit B, 3/4/25 email to special master).[1] The invoices document sales to customers for the time period March 16, 2023, through December 31, 2024, in the amount of $105,921,389, and total commissions due on such sales in the amount of $1,737,774.20. Each invoice identified a corresponding OEM customer purchase order number. (Exhibit C, Affidavit of Jason Wells).

On April 2, 2025, and April 11, 2025, Defendants produced folders containing "additional payment information that my client was able to access from the Horizon system" (Exhibit D, 4/2/25

---

[1] Such customers are Honda,FCA, Flex N Gate, Ground Effects, Mobis, Subaru, Tesla, Warren, Toyota, Toyota Motor MFG, BC, Toyota Motor MFG. TMMGT, Toyota Canada Inc., Toyota Motor MFG Indiana, Toyota Motor Eng & MFG North America.

and 4/11/25 emails).  The payment remittance records produced on April 2 and April 11 were significantly incomplete, as shown on the attached summary spreadsheet prepared by Plaintiff and as follows:

- The largest three OEM customers (FCA, Nissan and Toyota) have very significantly missing payment remittance records;

- Only Warren Distribution (a minor customer) has close alignment between the invoiced data produced on February 19, 2025;

- There is missing payment remittance data for all customers except Warren Distribution; and

- The limited produced payment remittance data is approximately $95.5 million less than the invoiced sales, based on the invoices produced on February 19.

(Exhibit E, spreadsheet summary).

To date, Defendants have not produced a single purchase order, although purchase order numbers are identified on the 6,015 invoices produced on February 19, 2025, by Defendants and Defendants' executives have testified that HGA has continued to ship parts to the OEM customers since March 15, 2023, the effective date of Defendant's improper termination of the Agreement. The only purchase orders in Plaintiff's possession are blanket purchase orders issued by Toyota to HGA through the customer portal for one part program (Toyota Tacoma trailer hitch) dated March 1, 2023 through November 7, 2023, covering "100%" of the OEM's production and service part requirements through December 2023.

Section 6 of the Agreement titled "Commission" governed Defendants' obligation to pay Plaintiff commissions.  Section 6.1 titled "Commission Rate" required Defendants to pay Plaintiff commission for its services for all sales of products to the OEM customers:

"Subject to Section 6.2, Supplier *shall* pay Sales Representative, as the sole and exclusive compensation payable to Sales Representative, a commission ('Commission') for its services *for all sales of Products to Customers* pursuant to

3

the terms of this Agreement, including the terms of **Schedule 2**, in the amount equal to the Commission Percentage multiplied by the Net Sales Price."

(Agreement, ¶ 6.1, bold and italicized emphasis included). Section 6.2 of the Agreement titled "Commission Payment Terms" governed the timing of payment "for all sales" earned pursuant to Section 6.1:

a) Commissions become payable to Sales Representative only at such times and only to the extent that Supplier accepts a purchase order and Supplier invoices and receives payment from Customer under the corresponding Purchase Contract.

b) Supplier shall pay Sales Representative on each Monthly Date the commission owed for the immediately preceding Monthly Period.

Defendants have argued in summary judgment motion papers that "HGA does not owe any monies for commission related to purchase orders it did not approve or review." Although the argument is non-sensical since (a) Defendants would not send an invoice for payment without receiving a purchase order from the customer and shipping parts; (b) purchase orders are sent directly to HGA by the OEM customer; and (c) commissions are calculated based on actual sales, Defendants have an obligation to produce all purchase orders in their possession, custody and control based on such an argument. At minimum, the records are relevant to Plaintiff's claim for breach of the sale representative agreement based on Defendants' failure to pay commissions and the calculation of damages. Similarly, the monthly payment remittance records for each OEM customer document payment for invoiced sales and resulting commission calculation, and are also relevant to such issues. The HGA income statements and unproduced account receivable reports for each OEM customer further evidence payment received from customers and HGA revenue generated from sales, based on the deposition testimony of Defendants' Vice President of Finance. (**Exhibit F**, J. Salvia Transcript).

4

The remaining unproduced purchase order, payment remittance, financial statement and accounts receivable report records are unequivocally within the proper scope of discovery and subject to production by any objective measure. Accordingly, Plaintiff respectfully requests the special master to recommend the production of such records pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted,

**STROBL PLLC**

By: _/s/ Henry J. Andries, Jr._
Henry J. Andries, Jr. (P53669)
_Attorney for Plaintiff_
33 Bloomfield Hills Parkway, Ste. 125
Bloomfield Hills, MI 48304
(248) 540-2300

Dated: April 28, 2025

*S&B\112175\001\MISC\SB905359.DOCX

5

# EXHIBIT A

## Hank Andries

| | |
|---|---|
| **From:** | Hank Andries |
| **Sent:** | Tuesday, February 11, 2025 12:25 PM |
| **To:** | Eric Scheible; Monica Hunt |
| **Cc:** | Natasha Rao; Denise Smith |
| **Subject:** | RE: The Robert D. Stewart Company v First Brands Group, et al - case No. 2:23-cv-11765 |
| **Attachments:** | Responses to Second Requests (SB886784xB7BE6).pdf |

Eric,

Thank your for the follow-up.  The voluminous XLS files are not helpful to my client.  Yes, we need another zoom call.  At minimum, the following material remains outstanding:

- OEM Purchase orders on sales from 3/15/23 to present (first request for production #1);
- Invoices to OEM customers on sales from 3/15/23 to present (first request for production #2);
- Monthly payment remittance reports received from OEM customers on sales from 3/15/23 to present (see attached Defendants' response to Plaintiff's second document request #5, served 12/9/24); and
- Financial statements for the time period 1/1/22 through 12/31/24. (see attached Defendants' response to Plaintiff's second document request #s 1-2, served 12/9/24).

Please let me know some convenient times for a zoom meeting to discuss.

Thanks,

Hank



**Henry J. Andries, Jr.**

Strobl PLLC
33 Bloomfield Hills Parkway | Suite 125
Bloomfield Hills, MI 48304-2936
Email: handries@strobllaw.com
Website: www.strobllaw.com
Direct:  248.205.2710
Main:    248.540.2300
Fax:     248.645.2690

*The information contained in this e-mail is CONFIDENTIAL, subject to attorney-client privilege or constitutes privileged work product. The information is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any use, dissemination, disclosure, copying, distribution, or other use of the information contained herein (including any reliance thereon) is not authorized and is STRICTLY PROHIBITED. If you received this e-mail in error, please immediately contact the sender and destroy the material in its entirety. Thank you.*

**From:** Eric Scheible <es@frascap.com>
**Sent:** Thursday, February 06, 2025 5:19 PM
**To:** Hank Andries <handries@strobllaw.com>; Monica Hunt <mhunt@alglawpc.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: The Robert D. Stewart Company v First Brands Group, et al - case No. 2:23-cv-11765

1

Hi all, I'm following up on this matter.

Hank, when we last spoke, you were going to review with your client the voluminous XLS files Monica emailed over. Have you had a chance to do so and is it sufficient? If not, do we need another Zoom call?

Let me know your thoughts on a direction to move this forward and whether you need my involvement or have resolved all open items.

Thanks,

Eric

**Eric Scheible**
Frasco Caponigro
Wineman Scheible Hauser Luttmann PLLC
1301 West Long Lake Road
Suite 250
Troy, Michigan  48098
248.334.6767 (o)
248.420.2090 (m)
es@frascap.com
frascap.com

**From:** Hank Andries <handries@strobllaw.com>
**Sent:** Thursday, January 9, 2025 4:57 PM
**To:** Eric Scheible <es@frascap.com>; Monica Hunt <mhunt@alglawpc.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: The Robert D. Stewart Company v First Brands Group, et al - case No. 2:23-cv-11765

Received, thanks



**Henry J. Andries, Jr.**
**Strobl PLLC**
33 Bloomfield Hills Parkway | Suite 125
Bloomfield Hills, MI 48304-2936
Email: handries@strobllaw.com
Website: www.strobllaw.com
Direct: 248.205.2710
Main:   248.540.2300
Fax:    248.645.2690

*The information contained in this e-mail is CONFIDENTIAL, subject to attorney-client privilege or constitutes privileged work product. The information is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any use, dissemination, disclosure, copying, distribution, or other use of the information contained herein (including any reliance thereon) is not authorized and is STRICTLY PROHIBITED. If you received this e-mail in error, please immediately contact the sender and destroy the material in its entirety. Thank you.*

**From:** Eric Scheible <es@frascap.com>
**Sent:** Thursday, January 09, 2025 4:55 PM
**To:** Hank Andries <handries@strobllaw.com>; Monica Hunt <mhunt@alglawpc.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: The Robert D. Stewart Company v First Brands Group, et al - case No. 2:23-cv-11765

# EXHIBIT B

## Hank Andries

| | |
|---|---|
| **From:** | Hank Andries |
| **Sent:** | Tuesday, March 04, 2025 7:37 PM |
| **To:** | Eric Scheible; Monica Hunt |
| **Cc:** | Natasha Rao; Denise Smith |
| **Subject:** | RE: Stewart Co v First Brands - Accounting Documents |
| **Attachments:** | Mazda Remittance Advice Communication 01-13-2024[1][2] (SB897876xB7BE6).pdf; paymentRecord_0BNBLC01 (SB897878xB7BE6).pdf |
| | |
| **Follow Up Flag:** | Copied to Worldox (S&B\112175\001\MISC\SB897934.MSG) |

Thanks for the zoom meeting this afternoon. As discussed, the production included only payment remittance/advice records for Mazda and Nissan (see attached examples, for Eric's reference). But it did include such records for the following customers and sub-customers:

- Honda
- FCA
- Flex N Gate
- Ground Effects
- Mobis
- Subaru
- Tesla
- Warren
- Toyota
- Toyota Motor MFG, BC
- Toyota Motor MFG. TMMGT
- Toyota Canada Inc.
- Toyota Motor MFG Indiana
- Toyota Motor Eng & MFG North America

Hank



**Henry J. Andries, Jr.**
Strobl PLLC
33 Bloomfield Hills Parkway | Suite 125
Bloomfield Hills, MI 48304-2936
Email: handries@strobllaw.com
Website: www.strobllaw.com
Direct:  248.205.2710
Main:   248.540.2300
Fax:    248.645.2690

*The information contained in this e-mail is CONFIDENTIAL, subject to attorney-client privilege or constitutes privileged work product. The information is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any use, dissemination, disclosure, copying, distribution, or other use of the information contained herein (including any reliance thereon) is not authorized and is STRICTLY PROHIBITED. If you received this e-mail in error, please immediately contact the sender and destroy the material in its entirety. Thank you.*

1

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE ROBERT D. STEWART COMPANY
d/b/a THE STEWART COMPANY,
a California corporation,

Plaintiff,

v.

FIRST BRANDS GROUP, LLC,
a Delaware limited liability company, and
HORIZON GLOBAL AMERICAS INC.,
a Delaware corporation

Defendants.

Case No.: 23- cv-11765

Hon. Stephen J. Murphy, III

| STROBL PLLC | THE ALLEN LAW GROUP |
|---|---|
| Henry J. Andres, Jr. (P53669) | Monica N. Hunt (P68838) |
| Michael L. Geller (P42862) | Natasha L. Rao (P85102) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 33 Bloomfield Hills Pkwy., Ste. 125 | 3031 W. Grand Blvd. |
| Bloomfield Hills, MI 48304-2376 | Detroit, MI 48202-3046 |
| (248) 540-2300 | (313) 961-0200 |
| handries@stroblpc.com | mhunt@alglawpc.com |
| mgeller@strobllaw.com | nrao@alglawpc.com |

**AFFIDAVIT OF JASON WELLS**

| State of Ohio | ) |
| | ) ss |
| County of Delaware | ) |

I, Jason Wells, having first been duly sworn, states as follows:

1. My name is Jason Wells. I am employed by The Robert D. Stewart

Company d/b/a The Stewart Company ("TSC") as its Chief Operating Officer.

1

2.     On behalf of TSC, I worked with Horizon Global Americas Inc. ("HGA") from approximately June 2005 through approximately March 15, 2023, in connection with TSC's role as the exclusive sales representative for HGA in North America for primarily Japanese and Korean original equipment manufacturers (OEMs), pursuant to the sales representative agreement(s) between TSC and HGA. My duties included planning, quoting, strategy and OEM customer service and management.

3.     During the period of time TSC served as the exclusive sales representative for HGA's OEM supply business, HGA's parts were supplied pursuant to master purchase agreements between the supplier and OEM after the vehicle production programs (the "Programs") were awarded to the supplier. Following award of such Programs, the OEM customer sent purchase orders directly to the supplier. After products are shipped to and accepted by the customer, HGA would invoice the customer which would then submit payment together with payment remittance advice or documentation, typically on a monthly basis.

4.     On or about December 9, 2024, Defendants produced an excel spreadsheet summary labeled FB/HGA 00000452 of monthly "Invoiced Sales" to OEM customers covered by the Agreement and HGA's resulting commission calculation on such sales from October 2022 through September 2024, which I have reviewed. The spreadsheet summary identified invoiced sales and commissions

2

from such sale in the cumulative amount of $66,529,664 and $1,091,672, respectively. The spreadsheet summary did not include the actual or underlying invoices supporting the summary numbers and calculations.

5. On or about February 19, 2025, Defendants produced invoices sent to all customers covered by the Agreement for the time period March 16, 2023, through December 31, 2024 (the "HGA Invoices"), which TSC has reviewed. The HGA Invoices include, in addition to the invoice amount and other data, purchase order numbers to which the invoice applied. The February 19, 2025 production did not include previously requested customer payment remittance or advice reports, except for such reports for Mazda and Nissan.

6. To date, TSC has not received all previously requested customer payment remittance/advice reports for all OEM customers covered by the Agreement, including but not limited to Flex N Gate; Warren Distribution; Fiat Chrysler; Tesla; Toyota; Toyota Canada (TCI); Toyota Tacoma Program; and Toyota Indiana (TMMIN).

7. The HGA Invoices document invoiced sales to OEM customers for the time period March 16, 2023, through December 31, 2024, in the cumulative amount of $105,921,389.01, and commissions due on such sales in the cumulative amount of $1,737,774.20.

3

8.      Based on TSC's comparison of the spreadsheet summary prepared by HGA and identified as FB/HGA 00000452, and the actual HGA Invoices, the summary spreadsheet significantly underreported the amount of invoiced sales and resulting commissions due TSC from March 16, 2023 through September, 2024, by the cumulative amount of $57,300,428.69 and $968,923.21, respectively.

9.      Attached as Exhibit A to this Affidavit is a summary I prepared of the HGA Invoices data and comparison of same to HGA 00000452.  As shown on Exhibit A, TSC has calculated the total amount of documented unpaid commissions due on invoiced sales through December 31, 2024, to be $2,085,012.46, including the undisputed amount of $347,238.27 in commissions due for invoiced sales through March 15, 2023.

10.     I have personal knowledge of the facts stated herein and if called as a witness, I could testify competently to the foregoing.

Jason Wells

Subscribed and sworn to before me this 13th day of March, 2025.

_____, Notary Public

Delaware County, Ohio

My Commission expires: MAY 6, 2029

# EXHIBIT A

**Invoice Data - Summary**

| Sales | | | | Commissions | | |
|---|---|---|---|---|---|---|
| Time Period | 3/16/2023 - 12/2023 | 1/2024 - 12/2024 | | Time Period | 3/16/2023 - 12/2023 | 1/2024 - 12/2024 |
| Invoice Data - Sales | $73,815,908.32 | $32,105,480.69 | | Invoice Data - Sales | $1,284,619.62 | $453,154.58 |

| Commissions Due and agreed | |
|---|---|
| upon by both parties thru 3/15/23 | $347,238.27 |
| 3/16/2023 - 12/2023 | $1,284,619.62 |
| 1/2024 - 12/2024 | $453,154.58 |
| Total Commissions thru 12/2024 | $2,085,012.46 |

| Comparison to previously supplied FB Report | | | |
|---|---|---|---|
| HGA 00000452 Commission Report | | | |
| | 3/16/2023 - 12/2023 | 1/2024 - 9/2024 | |
| Sales | $33,440,498.91 | $12,517,267.63 | |
| Commissions | $572,730.88 | $161,125.63 | |
| | | | |
| **Invoice Data** | | | |
| | 3/2023 - 12/2023 | 1/2024 - 9/2024 | |
| Sales | $73,815,908.32 | $29,442,286.91 | |
| Commissions | $1,284,619.62 | $418,160.10 | |
| | | | |
| **VARIANCE UNDER REPORTED** | | | |
| | 3/2023 - 12/2023 | 1/2024 - 9/2024 | TOTAL |
| Sales | $40,375,409.41 | $16,925,019.28 | $57,300,428.69 |
| Commission | $711,888.74 | $257,034.47 | $968,923.21 |

# EXHIBIT D

## Hank Andries

| | |
|---|---|
| **From:** | Monica Hunt <mhunt@alglawpc.com> |
| **Sent:** | Friday, April 11, 2025 3:32 PM |
| **To:** | Eric Scheible; Hank Andries |
| **Cc:** | Natasha  Rao; Denise Smith |
| **Subject:** | Re: Stewart Company v First Brands |
| **Attachments:** | Warren mgf dist.zip; Tesla.zip |

Good Afternoon,

I have not received a follow up from Plaintiff after our last production. However, going back to review the last few emails, I see that two folders of payment information did not attach. They are attached to this email. If you did receive them, please disregard this production.

### MONICA N. HUNT

Partner



O: (313) 871-5500 ext. 104

3031 W. Grand Blvd., Suite 525, Detroit, MI 48202

mhunt@alglawpc.com

Important: This electronic mail communication from The Allen Law Group, PC is confidential and may be legally privileged. It is for use by the intended recipient(s) only. If you are not an intended recipient, you are hereby notified that the use, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately and delete the communication. Thank you.

---

**From:** Eric Scheible <es@frascap.com>
**Sent:** Friday, April 11, 2025 3:27 PM
**To:** Monica Hunt <mhunt@alglawpc.com>; Hank Andries <handries@strobllaw.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: Stewart Company v First Brands

Hi all, looking for an update. Have we resolved the open issues? If not, I need to prepare my report and recommendation and would like an update on where we stand after Monica's clients' latest production. The Court needs a response from me. Thanks, Eric

Eric Scheible
Frasco Caponigro
Wineman Scheible Hauser Luttmann PLLC
1301 West Long Lake Road
Suite 250
Troy, Michigan  48098
248.334.6767 (o)
248.420.2090 (m)
es@frascap.com

1

frascap.com

**From:** Eric Scheible
**Sent:** Monday, April 7, 2025 11:48 AM
**To:** Monica Hunt <mhunt@alglawpc.com>; Hank Andries <handries@strobllaw.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: Stewart Company v First Brands

Good morning, all.

Hank, have you had a chance to review this with your client?

If we need a call, how is everyone's schedule on Wednesday between 10a and 3p and Thursday any time after 930a?

Thanks, Eric

<span style="color:red">Eric Scheible</span><br>
Frasco Caponigro<br>
Wineman Scheible Hauser Luttmann PLLC<br>
1301 West Long Lake Road<br>
Suite 250<br>
Troy, Michigan  48098<br>
248.334.6767 (o)<br>
248.420.2090 (m)<br>
es@frascap.com<br>
frascap.com

**From:** Monica Hunt <mhunt@alglawpc.com>
**Sent:** Wednesday, April 2, 2025 10:40 PM
**To:** Eric Scheible <es@frascap.com>; Hank Andries <handries@strobllaw.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>
**Subject:** Stewart Company v First Brands

Good Evening,
Attached, please find additional payment information that my client was able to access from the Horizon system. Please note that a third party was required to locate this information. It is believed at this time that no additional information is accessible. My client is preparing a statement to that effect.

For purposes of another meeting, I am available on Monday after 1pm and Tuesday after 2:30.



**MONICA N. HUNT**

Partner

O: (313) 871-5500 ext. 104

3031 W. Grand Blvd., Suite 525, Detroit, MI 48202

mhunt@alglawpc.com

2

Important: This electronic mail communication from The Allen Law Group, PC is confidential and may be legally privileged. It is for use by the intended recipient(s) only. If you are not an intended recipient, you are hereby notified that the use, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately and delete the communication. Thank you.

---

This email has been scanned for spam and viruses. Click here to report this email as spam.

# EXHIBIT E

**Payment Remittance Advice**

| Customer | Jan '23 | Feb '23 | Mar '23 | Apr '23 | May '23 | Jun '23 | Jul '23 | Aug '23 | Sep '23 | Oct '23 | Nov '23 | Dec '23 | Jan '24 | Feb '24 | Mar '24 | Apr '24 | May '24 | Jun '24 | Jul '24 | Aug '24 | Sep '24 | Oct '24 | Nov '24 | Dec '24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| American Honda | | | | | | | | | $61,469.84 | $1,219.52 | $35,352.01 | $111.73 | $655.95 | $49,549.87 | $36,145.56 | $14,046.26 | $21,146.28 | $40,036.04 | $63,197.12 | $36,011.15 | $40,594.92 | $36,727.64 | $18,855.12 | $12,528.02 |
| Mazda | | | | | | $3,748.75 | $27,424.85 | $95,727.91 | $12,243.21 | $72,068.81 | $34,763.21 | $19,641.85 | $35,000.31 | $36,115.21 | $16,037.27 | $24,206.23 | | | $20,401.32 | | | | | $24,919.75 |
| MOBIS | | | | | | | | | | | | | | | | | | | | | | | | |
| Nissan | | | $107,802.42 | $190,281.24 | $16,474.37 | $27,998.73 | $67,510.62 | $463,068.42 | $161,545.89 | $303,995.67 | $613,424.54 | $239,135.82 | $108,703.31 | $89,842.23 | $478,951.11 | $58,742.76 | $271,039.30 | $143,626.44 | $40,688.33 | $45,245.75 | $6,996.99 | $149,152.96 | $39,309.87 | $9,558.26 |
| Subaru | | $8,095.65 | | | | | $5,607.00 | | $9,506.25 | | $8,010.00 | | | | | | | | | | | | | |
| Toyota | | | | | | | | | | | | | | $521,116.18 | $460,836.75 | $111,312.47 | $479,583.28 | $368,953.78 | $226,569.04 | $12,117.36 | $334,841.47 | $474,425.02 | $277,320.60 | $463,797.38 |
| FCA | | | | | | | | | $914,561.63 | | | | | | | | | | | | | | | |
| Flex N Gate | | | | | | | $13,330.56 | | | | | | $6,665.28 | | | | | | $2,178.24 | | | | | |
| Tesla | $94,995.25 | | | | $401,144.00 | $567,546.00 | | | | | $74,996.25 | | | | | | | | | | | | | |
| Warren Dist. | $67.92 | | $67.92 | $1,582.35 | | $3,602.60 | $9,347.25 | $17,673.33 | $1,356.30 | $1,755.22 | $4,475.79 | $9,765.36 | | | $2,286.36 | | | | | | | $3,368.94 | $1,627.56 | |

---

**Customer Remittance Advice Summary**

| Summary | 3/2023 - 12/2023 | 1/2024 - 12/2024 |
|---|---|---|
| | $4,599,337.22 | $5,714,831.04 |

**Invoice Data (Previously Provided)**

| | 3/16/2023 - 12/2023 | 1/2024 - 12/2024 |
|---|---|---|
| | $73,615,908.32 | $32,105,480.69 |
| Variance | $69,216,571.10 | $26,390,649.65 |

**1. Summary Invoices vs Payment Remittance**

| Notes | Invoice Total | Payment Remittance | Variance | Notes |
|---|---|---|---|---|
| 2023 3/15 - 12/31 | $73,615,908.32 | $4,599,337.22 | -$69,216,571.10 | Provided Payment remittance advices are $69.2M less than provided invoices |
| 2024 1/1 - 12/31 | $32,105,480.69 | $5,714,831.04 | -$26,390,649.65 | Provided Payment remittance advices are $26.34M less than provided invoices |

**2. Customer level Summary Invoices vs Payment Remittance**

| | Remittance 3/15/23 - 12/21/24 | Invoice 3/15/23 - 12/21/24 | Variance | Notes |
|---|---|---|---|---|
| American Honda | $467,647.03 | $499,304.48 | -$31,657.45 | No Payment remittance advices received for 2021 March thru August |
| Mazda | $422,298.68 | $481,047.90 | -$58,749.22 | No Payment remittance advices received for 2021 March thru May |
| MOBIS | $0.00 | $44,494.42 | -$44,494.42 | No payment remittance advices received at all for CY 2023 or CY 2024 |
| Nissan | $3,632,895.03 | $17,120,597.14 | -$13,487,702.11 | Only received for 4 months from 3/23 - 12/24 |
| Subaru | $31,218.90 | $49,074.20 | -$17,855.30 | Only receive Payment remittance advices for 4 months |
| Toyota | $3,730,873.33 | $48,744,951.64 | -$45,014,078.31 | No payment remittance advices received at all for CY 2023 |
| FCA | $914,561.63 | $37,023,643.38 | -$36,109,081.75 | Only receive payment remittance advice for Sept 2023 |
| Flex N Gate | $22,174.08 | $858,602.64 | -$836,428.56 | Only receive Payment remittance advices for 3 months |
| Tesla | $1,138,681.50 | $1,041,715.25 | $96,966.25 | |
| Warren Dist | $56,976.90 | $57,957.96 | -$981.06 | |
| | $10,417,327.08 | $105,921,389.01 | $95,504,061.93 | |

**3. Summary Comments**

- Largest 3 customers FCA, Nissan and Toyota have very significant missing payment remittance information
- Only Warren Dist. (minor customer) has close alignment between invoice data and payment remittance data
- There is missing payment remittance advices for all customers except maybe Warren Dist.
- Remittance data is ~$95.5M less than invoices provided

# EXHIBIT F

Horizon Global America's, Inc.
November 26, 2024

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

THE ROBERT D. STEWART COMPANY

d/b/a THE STEWART COMPANY, a

California corporation,

          Plaintiff,

  vs.                    Case No. 23-cv-11765

                            Hon. Stephen J. Murphy, III

FIRST BRANDS GROUP, LLC, a

Delaware limited liability

company, and HORIZON GLOBAL

AMERICAS INC., a Delaware

corporation,

          Defendants.

_____

The Remote Deposition of JOSEPH V. SALVIA, III,

Commencing at 9:58 a.m.,

Tuesday, November 26, 2024,

Before Helen F. Benhart, CSR-2614,

Appearing remotely from Wayne County, Michigan.

Horizon Global America's, Inc.
November 26, 2024

Page 2

REMOTE APPEARANCES:

HENRY J. ANDRIES, JR.
Strobl, P.L.L.C.
33 Bloomfield Hills Parkway
Suite 125
Bloomfield Hills, Michigan  48304
(248) 540-2300
handries@strobllaw.com
    Appearing on behalf of the Plaintiff.

MONICA N. HUNT
NATASHA L. RAO
The Allen Law Group, P.C.
3031 West Grand Boulevard
Suite 525
Detroit, Michigan  48202
(313) 871-5500
mhunt@alglaw.com
nrao@alglaw.com
    Appearing on behalf of the Defendants.

ALSO PRESENT:
JASON WELLS

Page 3

TABLE OF CONTENTS

WITNESS                                  PAGE
JOSEPH V. SALVIA, III

EXAMINATION
BY MR. ANDRIES:                            4
EXAMINATION
BY MS. HUNT:                              33
RE-EXAMINATION
BY MR. ANDRIES:                          34

                    EXHIBITS

EXHIBIT                                  PAGE
(Exhibit retained by Mr. Andries.)

DEPOSITION EXHIBIT 1                      24

Page 4

Remote Proceedings
Tuesday, November 26, 2024
9:58 a.m.

                THE REPORTER:  The attorneys participating in this deposition acknowledge that I am not physically present in the deposition room.  They further acknowledge that in lieu of an oath administered in person, the witness will verbally declare his testimony in this matter is under penalty of perjury.  The parties and their counsel consent to this arrangement and waive any objections to this manner of reporting.  Please indicate your agreement by stating your name and your agreement on the record.

                MR. ANDRIES:  Henry Andries, agreed.

                MS. HUNT:  Monica Hunt, I agree.

                JOSEPH V. SALVIA, III,

Was thereupon called as a witness herein, and after having been first duly sworn to testify to the truth, the whole truth and nothing but the truth, was examined and testified as follows:

                    EXAMINATION

BY MR. ANDRIES:

Q.    Good morning, Mr. Salvia.  Did I pronounce that correctly?

Page 5

A.    Yes.

Q.    Okay.  Good.  Thank you for appearing this morning.  I appreciate your time.

                MR. ANDRIES:  This is the deposition of Joe Salvia taken pursuant to a Notice of Taking Rule 30(b)(6) Deposition served on Defendant First Brands Group and Horizon Global Americas.

BY MR. ANDRIES:

Q.    Mr. Salvia, I represent The Stewart Company in connection with pending litigation against First Brands and Horizon Global.

        Can you please state your full name for the record.

A.    Joseph Vito Salvia, III.

Q.    Where are you currently located during this deposition?

A.    Somerdale, New Jersey.

Q.    Are you located at a residence or an office?

A.    I'm located in my house, my residence.

Q.    Okay.  Are you the only person in the room currently?

A.    Yes.

Q.    Okay.  Do you -- can you please state your current employer.

A.    First Brands Group, LLC.

Q.    Okay.  How long have you been employed by First

Horizon Global America's, Inc.
November 26, 2024

**Page 6**

Brands?

A. Since September of 2023.

Q. What's your job title?

A. Vice president of finance.

Q. And what do those -- what do your job duties entail as vice president of finance?

A. I have under my purview quoting new business financial evaluations, accounts receivable, customer rebates and calculations, pricing from a transactional standpoint, uploading the system and other ad hoc reporting requests for the company primarily commercial.

THE REPORTER: Excuse me, if I can interrupt for just a moment. Our fire alarm just went off.

(Off the record at 10:05 a.m.)

(Back on the record at 10:06 a.m.)

BY MR. ANDRIES:

Q. Mr. Salvia, are you familiar with Horizon Global Americas, Inc.?

A. Yes.

Q. Okay. And what can you tell me about the relationship between First Brands Group and Horizon Global Americas to your knowledge?

MS. HUNT: Object as to form. You can go ahead, Joe.

**Page 7**

THE WITNESS: Horizon Global Americas is a subsidiary of First Brands Group. They are a manufacturer and distributor of parts related aftermarket and OE and OEM markets.

BY MR. ANDRIES:

Q. Okay. Primarily towing and hitching related parts as I understand it?

A. That is correct.

Q. Do you have in your role as VP of finance any responsibilities as it relates to Horizon Global?

A. Yes.

Q. Okay. And what would those responsibilities be?

A. They include the administration of the accounts receivable department, the calculation of new business deals and quoting, the evaluation of pricing deals, also the evaluation of any commercially centric reporting and the calculation of commercially centric rebates and incentives.

Q. Do your duties involve, you know, any financial statement preparation or review?

MS. HUNT: I'm going to object as to form. You can go ahead, Joe.

THE WITNESS: No, not directly. We are responsible for certain aspects such as those items I previously described.

**Page 8**

BY MR. ANDRIES:

Q. Okay. And with respect to Horizon Global on the finance side, does anybody report to you from Horizon Global from a finance standpoint?

A. Yes.

Q. Okay. Who would that be?

A. The manager of accounts receivable --

THE REPORTER: I'm so sorry. I have an issue with the fire alarm.

MR. ANDRIES: Why don't we take a break here, make sure Fran's okay.

MS. HUNT: Yes.

(Off the record at 10:09 a.m.)

(Back on the record at 10:18 a.m.)

BY MR. ANDRIES:

Q. Who at Horizon Global reported to you on the finance side?

A. The manager of accounts receivable who also has four credit analysts who report up to her.

Q. Okay. And what are their names?

A. The manager is Dayna Vorenzo.

Q. Where is Dayna located from a work standpoint? What office does she work out of?

A. She works out of the Horizon Global corporate office.

Q. Okay. Where is that located?

**Page 9**

A. That's currently in Michigan.

Q. What do the credit analysts do?

A. They are responsible for account reconciliations and calling on certain customers for payments.

Q. Can you describe for me what account reconciliation entails in a little more detail?

A. Sure. So account reconciliation is essentially looking at the open invoices less any remittances, less any potential credits or deductions to determine what the true open accounts receivable balance that is due to Horizon Global for payment.

Q. So you indicated earlier Horizon Global sells parts to its customers, correct?

A. That is correct.

Q. Okay. And in connection with the sale of those parts, the customer would send a purchase order to Horizon Global. Is that your understanding?

A. Yes.

Q. Okay. And Horizon Global would send an invoice to the customer for payment in connection with the delivery of those parts. Is that your understanding?

A. Yes. For the parts that were physically shipped to the customer.

Q. Okay. And hopefully pursuant to those invoices, the customer would make payment on the invoice in

Horizon Global America's, Inc.
November 26, 2024

**Page 10**

connection with the shipment of those parts, correct?

MS. HUNT: Object as to form, but go ahead, Joe.

THE WITNESS: Yes. We would expect payment for the parts that shipped that we invoiced the customer for.

BY MR. ANDRIES:

Q. How does Horizon Global record the receipt of payment from a customer from a finance standpoint?

A. Horizon Global will -- from an accounting standpoint, they will debit cash and credit accounts receivable for the customer number in the sub ledger.

Q. So if I wanted to look at records identifying payments from customer for the shipment of parts, what records would I look at in connection with the sale and payment of such parts by Horizon Global?

MS. HUNT: I'll object as to form. Go ahead, Joe.

THE WITNESS: So we can look at what we would call our cash log which is a report of all the payment remittances from the customer, which is essentially the -- goes into what I talked about earlier, debiting the cash and crediting sub ledger -- the customer balance in the sub ledger and accounts receivable, but there would be the cash report which

**Page 11**

would have a summary of all the cash payments.

BY MR. ANDRIES:

Q. Is that log -- is it by part, by customer part or by customer name or a combination of both?

A. Our cash log would be at a customer remittance number level.

Q. Did you say a customer remittance -- I didn't catch that. Can you rephrase that?

A. Customer and remittance number.

Q. Okay. So would that -- let's say, for example, Toyota was the customer and multiple parts are shipped to Toyota. Would the customer remittance number be broken down by part for that customer or otherwise?

A. So upon the actual payment, the customer remittance should specify the invoices that the remittance is pertaining to. Then we can look up the specific invoices and parts that were shipped against such invoices.

Q. Where would you look up that information to look at the parts that correspond to the payment?

MS. HUNT: Object as to form.

THE WITNESS: I would look in one of two areas. So one, we can go directly into the Horizon ERP system and pull up the invoice to go look at the parts in the invoice. We also have a reporting tool

**Page 12**

called Vision. That is a data warehouse that is -- that links into the ERP and extracts this data so we can look at sales in a much more flexible, quicker manner.

BY MR. ANDRIES:

Q. So you maintain a cash log, the documents, the payments that you receive from the customers, correct?

A. That is correct.

Q. Okay. And then you can -- in order to reconcile that cash log, you can look at your ERP system to see what parts were shipped pursuant to the invoices to reconcile that with the cash log, is that accurate?

A. That is accurate.

Q. Okay. And then when that reconciliation is performed, you adjust the account receivables accordingly. Does that sound accurate?

A. Yes. We will adjust the accounts receivable balance for the customer number on the sub ledger by adding cash remittance that comes through, correct.

Q. Okay. When you refer to a sub ledger, what do you mean by that?

A. So a sub ledger is each customer account has its own accounts receivable balances that we can look into. So the sub ledger will be each specific customer's accounts receivable balance versus an aggregate total

**Page 13**

for the entire organization.

Q. I see. So if I wanted to see the payments made by Toyota, for example, for calendar year 2023 on the shipment of parts to Toyota, would that be shown on the sub ledger that you just identified?

MS. HUNT: Object as to foundation, but go ahead.

THE WITNESS: Yes, yes. We can look at all the transactions for Toyota's AR for a given time period on the sub ledger for Toyota, correct.

BY MR. ANDRIES:

Q. The accounts receivable reports, are those maintained monthly, quarterly, annually or all of the above?

A. So our accounts receivable reporting typically is at a point in time so it is updated daily. Historical reports are typically maintained for period ends, so that would be our fiscal month ends. Specific days are typically not retained beyond six weeks.

Q. And what about the sub ledger reports? Are those --

MS. HUNT: Object as to form.

Do you understand the question, Joe?

THE WITNESS: Can it can be repeated.

BY MR. ANDRIES:

Q. Yes. With respect to the sub ledger reports, are those available in monthly, quarterly, annual? How

Horizon Global America's, Inc.
November 26, 2024

**Page 14**

are those maintained?

A. Those are maintained similar to the accounts receivable balance. So they are updated daily, and we do maintain records at period ends, fiscal month end close periods.

Q. So in terms of -- from a financial recordkeeping standpoint, documenting the invoicing and payment to and from customers, is there any other financial recordkeeping method used other than the cash log you identified, the customer remittance ERP system you identified, the sub ledgers that you identified and the account receivable reports that you identified? Is there any other method of accounting for the invoice and then payment to the customers?

MS. HUNT: Object as to form.

THE WITNESS: We do maintain -- for credits and incentives to customers, we maintain a separate dashboard. It is referred to internally as the gross tenet dashboard. That is maintained for specific incentives due to customers and liabilities that are earned but not yet issued to the customer which would be a reduction to the accounts receivable or credit to the accounts receivable as they are issued.

BY MR. ANDRIES:

Q. The issuance of any such credits would be reflected in

**Page 15**

the accounts receivable report?

A. As they're issued, they would be reflected in the accounts receivable report, but prior to being issued they will be in this gross tenet dashboard as an earned but not yet issued liability.

Q. Does the account receivable report identify the invoice on one line, for example, and then payment as a credit or debit on another line like a typical accounts receivable report? Is that what it would look like?

MS. HUNT: Object as to form.

THE WITNESS: So yes. The accounts receivable report will show -- the accounts receivable will show the account balance. In the sub ledger we will show all of the transactions, the invoices, the payments and the credits to come to that end balance.

BY MR. ANDRIES:

Q. And where is the account receivable and sub ledger data maintained?

A. It is openly maintained in the ERP system. We do have some reporting dashboards that link in that extract that data, and management uses those for some reporting, but ultimately three the home is in the ERP system.

Q. Does Horizon Global -- let me rephrase that question.

**Page 16**

Would that data include data from January 1, 2023, through the present date?

MS. HUNT: Object as to form and foundation.

THE WITNESS: Yes.

BY MR. ANDRIES:

Q. Do you have any knowledge, Mr. Salvia, of the financial performance of Horizon Global's original equipment manufacturer division?

MS. HUNT: Object as to form.

THE WITNESS: I have knowledge since being a member of First Brands of their sales performance since I joined in September 2023.

BY MR. ANDRIES:

Q. And as of let's say December 31st, 2023, for the 2023 fiscal year, do you have knowledge of the revenue generated by Horizon Global on a total basis?

MS. HUNT: Object as to relevance. Go ahead, Joe.

THE WITNESS: Yes.

BY MR. ANDRIES:

Q. Okay. And what was that revenue to your knowledge?

MS. HUNT: Object as to relevance.

THE WITNESS: For Horizon Global North Americas, it was approximately 550 million dollars.

**Page 17**

BY MR. ANDRIES:

Q. And out of that 550 million, how much of that revenue was attributable to a sale of parts to original equipment manufacturers, OEMs?

MS. HUNT: Objection as to form and foundation. Go ahead, Joe.

THE WITNESS: I do not have that number handy at this moment.

BY MR. ANDRIES:

Q. You do not?

A. I do not have that number handy at this moment.

Q. Do you have any knowledge of the approximate percentage of revenue attributed to sales to OEMs as opposed to sales to aftermarket business?

MS. HUNT: Same objection. Go ahead, Joe.

THE WITNESS: As a general estimate, it would be --

BY MR. ANDRIES:

Q. General estimate, yeah.

A. It would be approximately 30 percent.

Q. Thirty percent of the revenue approximately would be attributable to sales of parts to original equipment manufacturers?

A. That would be correct. That is my best estimate without looking at the numbers.

Horizon Global America's, Inc.
November 26, 2024

**Page 18**

Q. Okay.

A. Am I able to actually address a statement I made earlier? I apologize. Can I clarify something very quickly?

Q. Of course.

A. The 550 million I spoke of was global Horizon for the Americas. I apologize. It was closer to 240 million dollars. I want to make that key distinction. I apologize. I misinterpreted the question.

Q. No, no. Thanks for clarifying. I appreciate that. No need to apologize.

Are you familiar with The Stewart Company, my client?

MS. HUNT: Object --

THE WITNESS: I am.

MS. HUNT: -- as to form.

THE WITNESS: I am.

BY MR. ANDRIES:

Q. How are you familiar with The Stewart Company?

A. Through a notice of this lawsuit and litigation.

Q. Okay. And do you have any understanding of what the litigation involves?

A. Yes.

Q. Okay. And what is that understanding? Does it involve the -- is it your understanding that The

**Page 19**

Stewart Company is seeking the payment of commissions pursuant to a sales rep agreement?

A. Yes, that is my understanding.

Q. Has anyone at First Brands -- and I'm not asking about any conversations you've had with First Brands' counsel. That's privileged communication. Have you spoken with anyone at First Brands about the reason why The Stewart Company, you know, hasn't been paid commissions on the sale of parts to OEM customers?

A. I have not spoken to anyone at First Brands other than counsel.

Q. What about anyone at Horizon Global Americas?

MS. HUNT: I'll just say, Joe, that's with the same caveat as anyone other than counsel for Horizon.

THE WITNESS: No, I've not spoken to anyone other than counsel at Horizon Global regarding the nonpayment.

BY MR. ANDRIES:

Q. As you sit here today, do you know any reason why The Stewart Company hasn't been paid commissions by Horizon Global on the sale of parts to OEM customers?

MS. HUNT: Object as to form.

THE WITNESS: The reason that I am aware of had internally ended the relationship upon the

**Page 20**

acquisition of Horizon Global.

BY MR. ANDRIES:

Q. And do you have any knowledge as to why that relationship was ended?

A. The company typically does not retain outside sales forces. It wanted to leverage its internal sales force which had relationships at some of these customers.

Q. I understand that Horizon Global sells parts to original equipment manufacturers, as we discussed, and they also sell parts on the aftermarket side. Is that -- do you have the same understanding?

A. Yes.

Q. Does Horizon Global to your knowledge maintain separate financial records with respect to the OEM side and the aftermarket side?

MS. HUNT: Object as to form.

THE WITNESS: There is no statutory reporting at that level. However, we do have management level reporting that we do look at revenue by those channels.

BY MR. ANDRIES:

Q. What type of reporting is that from a documentation standpoint?

A. So we will look at such reporting such as the accounts

**Page 21**

receivable ledgers as I spoke of earlier. We will have reporting on revenue by sales channel or by customer. We will look at some reporting estimates on credits and incentives by channel and by customer, also some reporting on sales mix and pricing parity across customers in different channels and -- you know, for competitive internal reasons.

Q. Okay. What about profitability? Is that also looked at?

MS. HUNT: Object as to form. Go ahead.

THE WITNESS: The company has certain estimates on profitability by channel, but they are unaudited and nonstatutory, strictly managerial in nature.

BY MR. ANDRIES:

Q. What about for the 2023 fiscal year? Was the OEM channel profitable?

MS. HUNT: Object as to form.

THE WITNESS: I would have to review -- I'd have to review the numbers.

BY MR. ANDRIES:

Q. Okay. So as you sit here today, you can't -- you don't know whether it was profitable or not?

MS. HUNT: Same objection.

THE WITNESS: What is the definition of

U.S. Legal Support | www.uslegalsupport.com    18 to 21

Horizon Global America's, Inc.
November 26, 2024

**Page 22**

profitability or profitable?

BY MR. ANDRIES:

Q. Operating income. You're familiar with that term, correct?

A. Yes.

Q. Okay. So from an operating income standpoint, was the operating income positive for the OEM channel for fiscal year 2023?

MS. HUNT: Just going to object as kind of a different question from before, but if you -- so I'm objecting as to form and foundation, but if you can answer that, Joe.

THE WITNESS: So the company does not look at their channels by an operating income. We do look at a gross margin or material margin level, and my best estimate is, yes, it would be profitable at that gross margin and material margin level.

BY MR. ANDRIES:

Q. Does the company maintain separate profit and loss statements for the respective channels?

MS. HUNT: Object as to form.

THE WITNESS: The company does not from a gap perspective.

BY MR. ANDRIES:

Q. What about from a non-gap perspective strictly for

**Page 23**

internal use?

MS. HUNT: Same objection.

THE WITNESS: Again, at an internal use, we look at customers and channels at a gross margin, a material margin level.

BY MR. ANDRIES:

Q. Okay. And from a gross margin and material margin level, what record would show that?

A. We have an in-house built profitability report and model that is posted on a business intelligence server that will show that.

Q. Do you know, Mr. Salvia, whether Horizon Global continues to ship parts to original equipment manufacturers?

A. Yes.

Q. Okay. Do you know whether The Stewart Company had a written sales representative agreement with Horizon Global Americas?

A. I did become aware during this lawsuit, yes.

Q. Okay. Have you seen that agreement?

A. Yes.

Q. Excuse me. There is a share option here. Bear with me. Can you see that, Mr. Salvia?

A. I can.

Q. Okay. So this is the sales representative agreement

**Page 24**

that I was referring to. Is this the agreement that you have seen before?

A. Yes, this is the one that I have seen.

Q. Okay. When the did you first see this?

MS. HUNT: I'm just going to object. We don't see the entire agreement. We just see the first page, but, Joe, if you can affirm this is the first page of what you saw then --

THE WITNESS: Yes. I affirm that this is the first page of what I saw. The first time I had seen this was approximately one week ago.

MR. ANDRIES: So this is the sales representative agreement. Thank you, Monica. I should have identified it before. Sales representative agreement dated July 26, 2022, and effective as of July 1, 2022, between Horizon Global and The Stewart Company.

Fran, I'd like to mark this as Deposition Exhibit Number 1.

REMOTELY INTRODUCED:

DEPOSITION EXHIBIT 1

10:49 a.m.

BY MR. ANDRIES:

Q. So is it fair to say, Mr. Salvia, that you reviewed this agreement in connection with the preparation of

**Page 25**

your deposition?

A. Yes, that's correct, I reviewed this in preparation for this deposition.

Q. Okay. Did you review any other documents in preparation for your deposition?

A. I have reviewed some internal sales reporting and some payment -- some accounts payable reporting as well.

Q. With respect to the internal sales reporting records that you reviewed, can you be more specific as to what you reviewed?

A. I had reviewed our internal sales records from our Vision Data queue to, you know, review the revenue to all of Horizon North America customers, and I had also looked at this agreement, you know, had gone back and taken a look at the specific product lines as well for those customers in sales.

Q. Is there a specific name for the internal sales records from the Vision Data queue that you looked at?

A. It is an ad hoc report that I had run myself.

Q. Okay. Did you look at any specific time frame from the ad hoc sales records that you reviewed?

A. Yes. I looked from 2021 through September of 2024.

Q. How long did it take you to pull up that data from the Vision Data queue system and look at it?

MS. HUNT: Object as to form.

Horizon Global America's, Inc.
November 26, 2024

Page 26

THE WITNESS: It was a -- it was quite a few hours over the weekend and through yesterday, so it was probably I would estimate a solid eight plus hours of work.

BY MR. ANDRIES:

Q. Okay. And what did that data tell you from the '21 to '24 time period, if anything?

MS. HUNT: I'm going to object as to form. If you understand, Joe, you can answer.

THE WITNESS: It allowed me to see the sales trends and performance of these -- of the Horizon Global customers by customer down at specific product levels to just allow myself to ascertain if there has been a change in volume or sales at the customer since pre-acquisition to post acquisition.

BY MR. ANDRIES:

Q. Okay. And were those sales records that you looked at, were those specific to the original equipment manufacturer business that The Stewart Company handled for Horizon?

A. They were included. It was for all of North America Horizon customers.

Q. Okay. Did you understand that The Stewart Company was the only independent sales representative on the original equipment manufacturer side for Horizon

Page 27

Global?

MS. HUNT: Object as to form.

THE WITNESS: My understanding is they were a sales representative. I cannot confirm that they were the only sales representative based on my lack of knowledge of the historical pre-acquisition period.

BY MR. ANDRIES:

Q. Okay. So the internal sales records that you looked at in preparation for those -- for this deposition, is that different than the accounts receivable reports, sub ledger records, cash log reports and customer remittance records that you previously identified?

A. It is a subsection of the accounts receivable sub ledger. It would be the invoices to the customers and sales that would be impacting that sub ledger.

Q. I see. And would those sales reports -- it sounds like they would also reflect any credits or adjustments that were -- that were applied to such payments.

A. Yes. This would be specifically for the invoices and the sales. This would not be specific to the payments. So I would like to make the distinction this is invoices and credits, not payments.

Q. I see. So I'm going to scroll down on this sales rep agreement all the way to schedule two. The schedule

Page 28

two on Page 26 has a list of customers which continues on 27. Have you seen this schedule?

A. Yes.

Q. Okay. Do you know whether Horizon continues to supply parts to customers identified on this Page 26?

A. Horizon does continue to sell parts to certain customers on this list but not all of the customers on this list.

Q. Okay. Can you identify any customers on this list that Horizon is not currently shipping parts to?

A. Yes.

Q. Which customers are those?

A. Southeast Toyota, Golf States Toyota, Kia. Just looking down here. Lordstown Motors, Lucid Motors, Karma, Nikola, Bollinger Motors, Fisker, Faraday, Canoo, Kandi, NIO. And apologies. I don't have the full list in front of me. I know that those ones we are not selling to currently. There may be one or two others that I potentially have missed, but I'm sure those ones we're not shipping to currently.

Q. Okay. Thanks for identifying those. On the following page, Page 27 for the entities located in Mexico, is Horizon Global still shipping to these customers?

A. We are shipping to a portion of these customers. Some of these customers we are not.

Page 29

Q. Which customers are you not shipping to?

A. I can say for certainty JAC Motors, FAW Trucks, BAIC, VUHL, Zacua, and there are potentially more on there that, again, I don't have the full list in front of me, but I can tell you with certainty those last ones we are not shipping to currently.

Q. Okay. Thank you. I am going to show you another document. Okay. Can you see this, Mr. Salvia?

A. Yes, I can see it.

Q. Okay. So this is an e-mail that was sent on June 21st, 2023, from Andrew Patterson to Jason Wells and Curtice Booth, a copy to some other individuals. I know you started in September of 2023, so my first question is -- this predates your employment at First Brands. Have you seen this e-mail before?

MS. HUNT: Mr. Salvia, in discussing this e-mail, I want to be sure that you limit your testimony to information that was not discussed with counsel.

THE WITNESS: I have not seen this other than discussions with counsel.

BY MR. ANDRIES:

Q. Okay. Do you know who Andrew Patterson is?

A. Yes. He is a former employee of Horizon.

Q. Okay. Was he employed at Horizon at the time that you

Horizon Global America's, Inc.
November 26, 2024

Page 30

joined First Brands in September of 2023, if you recall?

A. I do not recall. I have never had any direct communication with Mr. Patterson.

Q. Okay. What about Darren Phillips? Are you aware of who Darren Phillips is?

A. Yes.

Q. Okay. And who is he?

A. Darren is a vice president of sales for First Brands Group.

Q. I assume, correct me if I'm wrong, that you have interaction with Mr. Phillips?

MS. HUNT: Object as to form.

THE WITNESS: That is correct.

BY MR. ANDRIES:

Q. From a business standpoint at First Brands in connection with your role as VP of finance and his as VP of sales, correct?

A. That is correct. We have a -- we do have communication at First Brands through our roles and responsibilities.

Q. Okay. There's another individual identified on this e-mail James Tindell. Do you know who Mr. Tindell is?

A. Yes. He is another former employer of Horizon Global.

Q. Was he employed at Horizon Global at the time that you

Page 31

started working with First Brands in September of 2023?

A. I believe he was no longer with the company at that point.

Q. So this e-mail states in the second paragraph of the body of the e-mail, it states Horizon shows that StewCo is owed 350,000 in past commissions. Do you see that sentence?

A. I do.

Q. Okay. Do you know whether that amount has been paid to The Stewart Company?

MS. HUNT: Object to as form.

THE WITNESS: I do not believe there have been any payments to Stewart Company after May 16th of 2023.

BY MR. ANDRIES:

Q. Did you know that Stewart Company hasn't received any payment since January of 2023?

MS. HUNT: Object as to form.

THE WITNESS: I have records showing payments to Stewart Company in May of 2023.

BY MR. ANDRIES:

Q. What records are those?

A. We have accounts receivable transactions and banking proof of payments related to the payments in May of

Page 32

2023.

Q. In 2023 or May of 2023?

A. May of 2023.

Q. Okay. So just so I'm clear, it's your testimony that Horizon Global made payments to Stewart Company in May of 2023?

MS. HUNT: Objection as to mischaracterization of his testimony. He says he has records that reflect, but you can go ahead, Joe.

THE WITNESS: Yeah. That is -- that's correct. I have records of payments made in May of 2023 to Horizon Global.

BY MR. ANDRIES:

Q. And that record would be an accounts receivable record or account payable record?

A. It would be an accounts payable record.

Q. Do you know what the amount of that purported payment or recorded payment was?

A. I have records of two payments in May of 2023, one for approximately $74,000 and a second payment for approximately $66,000.

Q. I'm going to go back to Deposition Exhibit Number 1 and again scroll down to schedule two. So for these customers identified on schedule two of the sales representative agreement, I just want to make sure

Page 33

we've covered all the records maintained by Horizon Global that would document the sale of parts and payment on the sale of those parts by the customer. So for these -- for these customers, are the records that you testified to earlier the cash log, the accounts receivable records, the sub ledger and the customer remittance records, are those the records maintained by Horizon Global that documents the shipment and payment -- the shipment to and payment by the customer?

A. That is correct.

Q. And would that be the same with respect to the customers identified on Page 27 of schedule two?

MS. HUNT: Object as to form.

THE WITNESS: Yes, that is correct.

MR. ANDRIES: Okay. Mr. Salvia, I'm going to thank you for your time this morning. I have no further questions at this time.

MS. HUNT: I just want to -- well, never mind. I'm sorry. I just have a couple of questions for you, Mr. Salvia.

EXAMINATION

BY MS. HUNT:

Q. With regards to the last line of questioning that was asked by Mr. Andries, in regards to schedule two,

Horizon Global America's, Inc.
November 26, 2024

Page 34

which is on Pages 26 and 27 of the document that's on the screen, the payment ledgers that you just indicated that you reviewed as to the customers, is it only as to the customers that you have record of shipments for?

A.   That is correct.

Q.   Okay.  I have no further questions.

RE-EXAMINATION

BY MR. ANDRIES:

Q.   And, again, just to clarify, what would show that the shipment -- what records would show the shipment to the customer?

A.   That would be the invoice documents from the AR sub ledger and the revenue ledger.

Q.   Okay.  Thank you, sir.  No further questions.

MS. HUNT:  Does this wrap up your questioning for both Horizon and First Brands?

MR. ANDRIES:  It does from a Rule 30(b)(6) deposition standpoint.  I certainly reserve the right to call additional witnesses whether from Horizon Global or First Brands on any relevant topic.

MS. HUNT:  Understood.  I just wanted to make sure because we did have the two scheduled for today.  I just wanted to make sure this is wrapping it up for today.

Page 35

MR. ANDRIES:  Yes.

MS. HUNT:  Thank you.

(The deposition was concluded at 11:11 a.m. Signature of the witness was not requested by counsel for the respective parties hereto.)

Page 36

CERTIFICATE OF NOTARY

STATE OF MICHIGAN )
                  ) SS
COUNTY OF WAYNE   )

        I, HELEN F. BENHART, certify that this deposition was taken remotely before me on the date hereinbefore set forth; that the foregoing questions and answers were recorded by me stenographically and reduced to computer transcription; that this is a true, full and correct transcript of my stenographic notes so taken; and that I am not related to, nor of counsel to, either party nor interested in the event of this cause.

HELEN F. BENHART, CSR-2614
Notary Public,
Wayne County, Michigan.
My Commission expires:  7/7/2027

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| THE ROBERT D. STEWART COMPANY d/b/a THE STEWART COMPANY, a California Company | Case No. 2:23-cv-11765 |
| | Hon. Stephen J. Murphy, III |
| Plaintiff, | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| FIRST BRANDS GROUP, LLC, a Delaware limited liability company, and HORIZON GLOBAL AMERICAS INC., a Delaware corporation | |
| Defendants. | |

| | |
|---|---|
| STROBL PLLC | THE ALLEN LAW GROUP |
| Henry J. Andres, Jr. (P53669) | Monica N. Hunt (P68838) |
| Michael L. Geller (P42862) | Natasha L. Rao (P85102) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 33 Bloomfield Hills Pkwy., Ste. 125 | 3031 W. Grand Blvd. |
| Bloomfield Hills, MI 48304-2376 | Detroit, MI 48202-3046 |
| (248) 540-2300 | (313) 961-0200 |
| handries@stroblpc.com | mhunt@alglawpc.com |
| mgeller@strobllaw.com | nrao@alglawpc.com |

**To: Eric Scheible, Special Master**
**Counsel of Record**

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SUMMARY REPORT TO SPECIAL MASTER**

i

Throughout this matter, Defendants have remained engaged in the discovery process. Since the Court issued its Order on November 25, 2024, ECF No. 43, granting Plaintiff's Renewed Motion to Compel, in part, Defense counsel has worked diligently with Plaintiff's counsel in coordination with efforts facilitated by the Discovery Master in order to fulfill Plaintiff's requests with the information and technology available.

On December 9, 2024, Defendants submitted a Response to Plaintiff's Second Requests for Production and pending First Requests for Production. *See* **Exhibit A**.

In meetings before the Discovery Master, Plaintiff's counsel clarified that the documentation relied upon by Defendants' Witness, Joe Salvia, was also required and within the scope of production, as it pertained to the sales commissions calculations that Mr. Salvia had calculated and had been produced and testified to during discovery. On January 24, 2024, Defendants submitted the documents Mr. Salvia relied upon as requests. *See* **Exhibit B**. The data produced encompassed over 15,000 documents. Noting that the accuracy of data produced in Defendant's Excel sheet was a potential concern to Plaintiff in seeking all the documentation en masse, it was proposed "to streamline the process and alleviate the burden on both First Brands and the Stewart Company, . . . that the Plaintiff audit specific sections of the data. The Plaintiff can specify the desired time frame or particular invoices for review, and First Brands will locate and forward the associated documents." *Id.*

1

Plaintiff continued to seek additional documentation. In an attempt to continue to produce whatever documentation became available, on February 19, 2024, Defendants produced additional accounting documents. *See* **Exhibit C**. Plaintiff's counsel noted that the payment remittance documentation contained within this production did not include that for specified customers, including:

- Honda
- FCA
- Flex N Gate
- Ground Effects
- Mobis
- Subaru
- Tesla
- Warren
- Toyota
- Toyota Motor MFG, BC
- Toyota Motor MFG, TMMGT
- Toyota Canada Inc.
- Toyota Motor MFG Indiana
- Toyota Motor Eng & MFG North America. *Id.*

On March 12, 2024, Defendants produced additional payment documentation, encompassing about 150 documents, including payment remittances, payment advice notes, and payment details for the previously named customers, including for Honda and Toyota. *See* **Exhibit D**.

On April 2, 2024, Defendants produced additional payment documentation, zip files, and relevant spreadsheets. *See* **Exhibit E**. On April 11, 2024, Defendants followed up with counsel and the Discovery Master, after not receiving any feedback

2

from Plaintiff's counsel, submitting additional production, if it had not already been received. *See* **Exhibit F.**

Defense counsel has made significant efforts to communicate with Plaintiff's counsel and to meet discovery requirements. Since FBG merged with HGA, data transfer and management have been underway. In the restructuring process, the location of the requested data had become more challenging to find and produce. As discovery endured, Defendants continued to sort through, review, and produce all documents related to HGA relevant to Stewart. This process has been unduly burdensome. *See Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 306 (6th Cir. 2007) (finding that "the search for responsive documents covering the period of October 3, 1997 to October 3, 2001 . . . took 'approximately two weeks and involved over 180 hours of labor," to recover and review 6,542 files was considered unduly burdensome).

Defense counsel has indicated this to Plaintiff's counsel throughout various phone calls and verbal communications that have taken place since substitution of counsel was ordered. Defense counsel has also attempted to make this clear throughout meetings before the Discovery Master as well.

At this juncture, Defendants have produced the available invoices, purchase orders, and remittance payments that have been made accessible through the available technology. As stated, Joe Salvia relies upon the overarching spreadsheets produced

on January 24, 2024, to calculate the sales and commissions attributed to programs previously associated with Plaintiff.  Defendants are unable to retrieve documentation that is not stored and saved within their possession. Defendants have provided all information that they have available to them.

Additionally, as it pertains to Plaintiff's reliance on arguments purported by Defendants in their pending Motion for Summary Judgment before the Court, Defendants' arguments related to purchase orders do not rely on the actual purchase orders as evidence and exhibits. Rather, these arguments are based on the testimony from witnesses speaking to whether purchase orders were submitted for Defendants' review. Moreover, the information contained within the requested purchase orders has been provided through the production provided to Plaintiff.

To date, Discovery has been regularly supplemented and updated as needed or requested. Production has included documentation pertaining to the above-listed companies previously associated with relevant programs. To date, Defense counsel has produced all of the requested records to the best of their ability. Based on representations made by Defendants, any documents that remain outstanding are not in Defendants' possession. Accordingly, Defendants respectfully request the special master to recommend the denial of any additional production to the extent such order would be rendered moot by Defendants' inability to produce documents it does not have.

4

Dated: May 5, 2025                              Respectfully submitted,

                                               **THE ALLEN LAW GROUP, PC**

                                               By: /s/ *Natasha L. Rao*
                                                   THE ALLEN LAW GROUP
                                                   Monica N. Hunt (P68838)
                                                   Natasha L. Rao (P85102)
                                                   mhunt@alglawpc.com
                                                   nrao@alglawpc.com

# EXHIBIT A

| | |
|---|---|
| **From:** | Monica Hunt |
| **To:** | Hank Andries |
| **Cc:** | Natasha Rao |
| **Subject:** | Stewart v FB/HGA - Responses to Request for Documents. |
| **Date:** | Monday, December 9, 2024 3:23:15 PM |
| **Attachments:** | Responses to Second Requests.pdf |
| | Responses to FirstRequests per court order.pdf |
| | HGA 00000452.xlsx |
| | Outlook-ALG-Logo-G.png |

Good Afternoon, Hank.

Attached and below, please find responses to your recent document requests as well and responses to the requests as ordered by the Court.

Please contact me if you have any questions or issues accessing the information.

HGA00000079-00000461.pdf



**Monica N. Hunt, Esq.**
**The Allen Law Group, P.C.**
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202
Phone: (313) 871-5500 ext. 104 | Fax: (313) 871-0517
Email: mhunt@alglawpc.com | Website: www.alglawpc.com

*Please note: This electronic mail communication is from The Allen Law Group, PC is confidential and may be legally privileged. It is for use by the intended recipient(s) only. If you are not an intended recipient, you are hereby notified that the use, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately and delete the communication. Thank you.*

# EXHIBIT B

| From: | Monica Hunt |
|---|---|
| To: | Hank Andries |
| Cc: | es@frascap.com; Natasha Rao |
| Subject: | The Stewart Company v First Brands - Production of Documents |
| Date: | Friday, January 24, 2025 6:21:21 PM |
| Attachments: | ME agings for StewCo customers.xlsx |
| | Warren Distribution Subledger.XLSX |
| | Other Customers Subledger.XLSX |
| | Outlook-ALG-Logo-G.png |

Good Evening,

Attached, you will find the data reviewed by Jos Salvia of First Brands, which was utilized to generate the document Bates Stamped HGA 452. As you can see in the accompanying spreadsheet titled "Other Customer Subledgers", this data encompasses over 15,000 documents, making the task of retrieving all of them quite extensive.

To streamline the process and alleviate the burden on both First Brands and the Stewart Company, I propose that the Plaintiff audit specific sections of the data. The Plaintiff can specify the desired time frame or particular invoices for review, and First Brands will locate and forward the associated documents.

While I acknowledge that this approach may not be ideal, the substantial time and resources required to generate and download all 15,000 documents lead us to believe this method would be the most efficient way to obtain and verify the requested information.



**Monica N. Hunt, Esq.**
**The Allen Law Group, P.C.**
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202
Phone: (313) 871-5500 ext. 104 | Fax: (313) 871-0517
Email: mhunt@alglawpc.com | Website: www.alglawpc.com

*Please note: This electronic mail communication is from The Allen Law Group, PC is confidential and may be legally privileged. It is for use by the intended recipient(s) only. If you are not an intended recipient, you are hereby notified that the use, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately and delete the communication. Thank you.*

# EXHIBIT C

| **From:** | Monica Hunt |
|---|---|
| **To:** | Hank Andries |
| **Cc:** | es@frascap.com; Natasha Rao |
| **Subject:** | Stewart Co v First Brands - Accounting Documents |
| **Date:** | Wednesday, February 19, 2025 6:17:11 PM |
| **Attachments:** | Outlook-ALG-Logo-G.png |

Hank,

Attached, please find a link to a shared drive which contains the requested accounting documents. Please let me know if you have any issues accessing the folder.

☐TSC Accounting Docs -SHR



**Monica N. Hunt, Esq.**
**The Allen Law Group, P.C.**
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202
Phone: (313) 871-5500 ext. 104 | Fax: (313) 871-0517
Email: mhunt@alglawpc.com | Website: www.alglawpc.com

*Please note: This electronic mail communication is from The Allen Law Group, PC is confidential and may be legally privileged. It is for use by the intended recipient(s) only. If you are not an intended recipient, you are hereby notified that the use, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately and delete the communication. Thank you.*

# EXHIBIT D

| | |
|---|---|
| **From:** | Monica Hunt |
| **To:** | Hank Andries; Eric Scheible |
| **Cc:** | Natasha Rao; Denise Smith |
| **Subject:** | Re: Stewart Co v First Brands - Accounting Documents |
| **Date:** | Wednesday, March 12, 2025 3:16:01 PM |
| **Attachments:** | image001.png |
| | image003.png |

Below, please find a link to the outstanding payment detail. If you have any issues accessing the documents, please contact me.

Payment Details.zip

Thank you.

**MONICA N. HUNT**

**Partner**

O: (313) 871-5500 ext. 104

3031 W. Grand Blvd., Suite 525, Detroit, MI 48202

**mhunt@alglawpc.com**

Important: This electronic mail communication from The Allen Law Group, PC is confidential and may be legally privileged. It is for use by the intended recipient(s) only. If you are not an intended recipient, you are hereby notified that the use, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately and delete the communication. Thank you.

---

**From:** Hank Andries <handries@strobllaw.com>
**Sent:** Monday, March 10, 2025 5:52 PM
**To:** Monica Hunt <mhunt@alglawpc.com>; Eric Scheible <es@frascap.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** FW: Stewart Co v First Brands - Accounting Documents

Monica, any update on the remaining remittance/advice records?  Thanks, Hank

Henry J. Andries, Jr.
Strobl PLLC
33 Bloomfield Hills Parkway | Suite 125
Bloomfield Hills, MI 48304-2936
Email: handries@strobllaw.com
Website:  www.strobllaw.com
Direct:  248.205.2710
Main:   248.540.2300



Fax:      248.645.2690

*The information contained in this e-mail is CONFIDENTIAL, subject to attorney-client privilege or constitutes privileged work product. The information is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any use, dissemination, disclosure, copying, distribution, or other use of the information contained herein (including any reliance thereon) is not authorized and is STRICTLY PROHIBITED. If you received this e-mail in error, please immediately contact the sender and destroy the material in its entirety. Thank you.*

**From:** Hank Andries
**Sent:** Tuesday, March 04, 2025 7:41 PM
**To:** Eric Scheible <es@frascap.com>; Monica Hunt <mhunt@alglawpc.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** FW: Stewart Co v First Brands - Accounting Documents

My email below inadvertently omittied the word "not" from the following sentence:  "But it did **not** include such records for the following customers and sub-customers:"  Please excuse the typo. Thanks, Hank

- Honda
- FCA
- Flex N Gate
- Ground Effects
- Mobis
- Subaru
- Tesla
- Warren
- Toyota
- Toyota Motor MFG, BC
- Toyota Motor MFG. TMMGT
- Toyota Canada Inc.
- Toyota Motor MFG Indiana
- Toyota Motor Eng & MFG North America

Hank

*The information contained in this e-mail is CONFIDENTIAL, subject to attorney-client privilege or constitutes privileged work product. The information is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any use, dissemination, disclosure, copying, distribution, or other use of the information contained herein (including any reliance thereon) is not authorized and is STRICTLY PROHIBITED. If you received this e-mail in error, please immediately contact the sender and destroy the material in its entirety. Thank you.*

---

**From:** Hank Andries
**Sent:** Tuesday, March 04, 2025 7:37 PM
**To:** Eric Scheible <es@frascap.com>; Monica Hunt <mhunt@alglawpc.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: Stewart Co v First Brands - Accounting Documents

Thanks for the zoom meeting this afternoon.  As discussed, the production included only payment remittance/advice records for Mazda and Nissan (see attached examples, for Eric's reference).  But it did include such records for the following customers and sub-customers:

- Honda
- FCA
- Flex N Gate
- Ground Effects
- Mobis
- Subaru
- Tesla
- Warren
- Toyota
- Toyota Motor MFG, BC
- Toyota Motor MFG. TMMGT
- Toyota Canada Inc.
- Toyota Motor MFG Indiana
- Toyota Motor Eng & MFG North America

Hank



Henry J. Andries, Jr.
Strobl PLLC
33 Bloomfield Hills Parkway | Suite 125
Bloomfield Hills, MI 48304-2936
Email: handries@strobllaw.com
Website: www.strobllaw.com
Direct:  248.205.2710
Main:   248.540.2300
Fax:      248.645.2690

*The information contained in this e-mail is CONFIDENTIAL, subject to attorney-client privilege or constitutes privileged work product. The*

*information is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any use, dissemination, disclosure, copying, distribution, or other use of the information contained herein (including any reliance thereon) is not authorized and is STRICTLY PROHIBITED. If you received this e-mail in error, please immediately contact the sender and destroy the material in its entirety. Thank you.*

**From:** Eric Scheible <es@frascap.com>
**Sent:** Friday, February 28, 2025 5:38 PM
**To:** Hank Andries <handries@strobllaw.com>; Monica Hunt <mhunt@alglawpc.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: Stewart Co v First Brands - Accounting Documents

Thanks, all. Invite just sent. Have a great weekend.

**Eric Scheible**
Frasco Caponigro
Wineman Scheible Hauser Luttmann PLLC
1301 West Long Lake Road
Suite 250
Troy, Michigan  48098
248.334.6767 (o)
248.420.2090 (m)
es@frascap.com
frascap.com

**From:** Hank Andries <handries@strobllaw.com>
**Sent:** Friday, February 28, 2025 5:26 PM
**To:** Monica Hunt <mhunt@alglawpc.com>; Eric Scheible <es@frascap.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: Stewart Co v First Brands - Accounting Documents

Works for me as well.  Thanks.



**Henry J. Andries, Jr.**
Strobl PLLC
33 Bloomfield Hills Parkway | Suite 125
Bloomfield Hills, MI 48304-2936
Email: handries@strobllaw.com
Website:  www.strobllaw.com
Direct:  248.205.2710
Main:    248.540.2300
Fax:      248.645.2690

*The information contained in this e-mail is CONFIDENTIAL, subject to attorney-client privilege or constitutes privileged work product. The information is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any use, dissemination, disclosure, copying, distribution, or other use of the information contained herein (including any reliance thereon) is not authorized and is STRICTLY PROHIBITED. If you received this e-mail in error, please immediately contact the sender and destroy the*

*material in its entirety. Thank you.*

---

**From:** Monica Hunt <mhunt@alglawpc.com>
**Sent:** Friday, February 28, 2025 5:03 PM
**To:** Eric Scheible <es@frascap.com>; Hank Andries <handries@strobllaw.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** Re: Stewart Co v First Brands - Accounting Documents

Good Afternoon,

Tuesday, March 4 at 3pm does work for me. Thank you.

### MONICA HUNT
**Shareholder**

O: (313) 871-5500  ext. 104
**mhunt@alglawpc.com**

*Important: This electronic mail communication from The Allen Law Group, PC is confidential and may be legally privileged. It is for use by the intended recipient(s) only. If you are not an intended recipient, you are hereby notified that the use, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately and delete the communication. Thank you.*

---

**From:** Eric Scheible <es@frascap.com>
**Sent:** Thursday, February 27, 2025 10:41 AM
**To:** Hank Andries <handries@strobllaw.com>; Monica Hunt <mhunt@alglawpc.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: Stewart Co v First Brands - Accounting Documents

Good morning, all. How about a Zoom on Tuesday (3/4) at 3p? If that works, I'll send an invite. Thanks.

### Eric Scheible
Frasco Caponigro
Wineman Scheible Hauser Luttmann PLLC
1301 West Long Lake Road
Suite 250
Troy, Michigan  48098

248.334.6767 (o)
248.420.2090 (m)
es@frascap.com
frascap.com

---

**From:** Hank Andries <handries@strobllaw.com>
**Sent:** Wednesday, February 26, 2025 4:21 PM
**To:** Eric Scheible <es@frascap.com>; Monica Hunt <mhunt@alglawpc.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: Stewart Co v First Brands - Accounting Documents

Eric, we did receive the production which contained a number of zip files with numerous subfiles.  I promptly forwarded to my client for review and hope to have feedback shortly.  The production did not include a description or log by bates-stamped number of what was produced.  As Monica indicated below, it appears to be voluminous.  If you would like to schedule a zoom meeting for early next week, please let me know.  I expect to have feedback from my client by then.  Thanks, Hank



Henry J. Andries, Jr.
Strobl PLLC
33 Bloomfield Hills Parkway | Suite 125
Bloomfield Hills, MI 48304-2936
Email: handries@strobllaw.com
Website: www.strobllaw.com
Direct: 248.205.2710
Main:   248.540.2300
Fax:    248.645.2690

*The information contained in this e-mail is CONFIDENTIAL, subject to attorney-client privilege or constitutes privileged work product. The information is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any use, dissemination, disclosure, copying, distribution, or other use of the information contained herein (including any reliance thereon) is not authorized and is STRICTLY PROHIBITED. If you received this e-mail in error, please immediately contact the sender and destroy the material in its entirety. Thank you.*

---

**From:** Eric Scheible <es@frascap.com>
**Sent:** Wednesday, February 26, 2025 3:26 PM
**To:** Monica Hunt <mhunt@alglawpc.com>; Hank Andries <handries@strobllaw.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: Stewart Co v First Brands - Accounting Documents

Thanks, Monica.

Hank, can you give us an update when you have a chance?

Eric

**Eric Scheible**
Frasco Caponigro
Wineman Scheible Hauser Luttmann PLLC
1301 West Long Lake Road
Suite 250
Troy, Michigan  48098
248.334.6767 (o)
248.420.2090 (m)
es@frascap.com
frascap.com

---

**From:** Monica Hunt <mhunt@alglawpc.com>
**Sent:** Wednesday, February 26, 2025 1:36 PM
**To:** Eric Scheible <es@frascap.com>; Hank Andries <handries@strobllaw.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** Re: Stewart Co v First Brands - Accounting Documents

Good Afternoon, Eric.

As requested by you, last Wednesday, Defendants provided the documents discussed in our previous meeting. Due to the volume, we submitted the production via a shared file. I have not received a response from Plaintiff to date regarding the submission.

Thank you.

**MONICA HUNT**
Shareholder

O: (313) 871-5500  ext. 104
**mhunt@alglawpc.com**

*Important: This electronic mail communication from The Allen Law Group, PC is confidential and may be legally privileged. It is for use by the intended recipient(s) only. If you are not an intended recipient, you are hereby notified that the use, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately and delete the communication. Thank you.*

**From:** Eric Scheible <es@frascap.com>
**Sent:** Tuesday, February 25, 2025 11:56 AM
**To:** Monica Hunt <mhunt@alglawpc.com>; Hank Andries <handries@strobllaw.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: Stewart Co v First Brands - Accounting Documents

Hi all, checking in for an update. Please let me know where we stand on the documents. Thanks, Eric

**Eric Scheible**
Frasco Caponigro
Wineman Scheible Hauser Luttmann PLLC
1301 West Long Lake Road
Suite 250
Troy, Michigan  48098
248.334.6767 (o)
248.420.2090 (m)
es@frascap.com
frascap.com

**From:** Monica Hunt <mhunt@alglawpc.com>
**Sent:** Wednesday, February 19, 2025 6:17 PM
**To:** Hank Andries <handries@strobllaw.com>
**Cc:** Eric Scheible <es@frascap.com>; Natasha Rao <nrao@alglawpc.com>
**Subject:** Stewart Co v First Brands - Accounting Documents

Hank,

Attached, please find a link to a shared drive which contains the requested accounting documents. Please let me know if you have any issues accessing the folder.

TSC Accounting Docs -SHR



**Monica N. Hunt, Esq.**
**The Allen Law Group, P.C.**
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202

Phone: (313) 871-5500 ext. 104 | Fax: (313) 871-0517
Email: mhunt@alglawpc.com | Website: www.alglawpc.com

*Please note: This electronic mail communication is from The Allen Law Group, PC is confidential and may be legally privileged. It is for use by the intended recipient(s) only. If you are not an intended recipient, you are hereby notified that the use, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately and delete the communication. Thank you.*

---

This email has been scanned for spam and viruses. Click here to report this email as spam.

---

This email has been scanned for spam and viruses. Click here to report this email as spam.

---

# EXHIBIT E

| | |
|---|---|
| **From:** | Monica Hunt |
| **To:** | es@frascap.com; Hank Andries |
| **Cc:** | Natasha Rao |
| **Subject:** | Stewart Company v First Brands |
| **Date:** | Wednesday, April 2, 2025 10:41:23 PM |
| **Attachments:** | 101449 customer FLEX N GATE CORP - with FCV Comments.xlsx |
| | FCA 417,283.85.xlsx |
| | FCA US 615936.66.xlsx |
| | FW_The Stewart Company - Productions.zip |

Good Evening,

Attached, please find additional payment information that my client was able to access from the Horizon system. Please note that a third party was required to locate this information. It is believed at this time that no additional information is accessible. My client is preparing a statement to that effect.

For purposes of another meeting, I am available on Monday after 1pm and Tuesday after 2:30.

### MONICA N. HUNT
**Partner**

O: (313) 871-5500 ext. 104

3031 W. Grand Blvd., Suite 525, Detroit, MI 48202
**mhunt@alglawpc.com**

Important: This electronic mail communication from The Allen Law Group, PC is confidential and may be legally privileged. It is for use by the intended recipient(s) only. If you are not an intended recipient, you are hereby notified that the use, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately and delete the communication. Thank you.

# EXHIBIT F

| From: | Monica Hunt |
|---|---|
| To: | Eric Scheible; Hank Andries |
| Cc: | Natasha Rao; Denise Smith |
| Subject: | Re: Stewart Company v First Brands |
| Date: | Friday, April 11, 2025 3:35:56 PM |
| Attachments: | Warren mgf dist.zip |
| | Tesla.zip |

Good Afternoon,

I have not received a follow up from Plaintiff after our last production. However, going back to review the last few emails, I see that two folders of payment information did not attach. They are attached to this email. If you did receive them, please disregard this production.

**MONICA N. HUNT**
**Partner**

O: (313) 871-5500 ext. 104

3031 W. Grand Blvd., Suite 525, Detroit, MI 48202
**mhunt@alglawpc.com**

Important: This electronic mail communication from The Allen Law Group, PC is confidential and may be legally privileged. It is for use by the intended recipient(s) only. If you are not an intended recipient, you are hereby notified that the use, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately and delete the communication. Thank you.

---

**From:** Eric Scheible <es@frascap.com>
**Sent:** Friday, April 11, 2025 3:27 PM
**To:** Monica Hunt <mhunt@alglawpc.com>; Hank Andries <handries@strobllaw.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: Stewart Company v First Brands

Hi all, looking for an update. Have we resolved the open issues? If not, I need to prepare my report and recommendation and would like an update on where we stand after Monica's clients' latest production. The Court needs a response from me. Thanks, Eric

Eric Scheible
Frasco Caponigro
Wineman Scheible Hauser Luttmann PLLC
1301 West Long Lake Road
Suite 250
Troy, Michigan  48098
248.334.6767 (o)
248.420.2090 (m)
es@frascap.com
frascap.com

**From:** Eric Scheible
**Sent:** Monday, April 7, 2025 11:48 AM
**To:** Monica Hunt <mhunt@alglawpc.com>; Hank Andries <handries@strobllaw.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: Stewart Company v First Brands

Good morning, all.

Hank, have you had a chance to review this with your client?

If we need a call, how is everyone's schedule on Wednesday between 10a and 3p and Thursday any time after 930a?

Thanks, Eric

Eric Scheible
Frasco Caponigro
Wineman Scheible Hauser Luttmann PLLC
1301 West Long Lake Road
Suite 250
Troy, Michigan  48098
248.334.6767 (o)
248.420.2090 (m)
es@frascap.com
frascap.com

**From:** Monica Hunt <mhunt@alglawpc.com>
**Sent:** Wednesday, April 2, 2025 10:40 PM
**To:** Eric Scheible <es@frascap.com>; Hank Andries <handries@strobllaw.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>
**Subject:** Stewart Company v First Brands

Good Evening,
Attached, please find additional payment information that my client was able to access from the Horizon system. Please note that a third party was required to locate this information. It is believed at this time that no additional information is accessible. My client is preparing a statement to that effect.

For purposes of another meeting, I am available on Monday after 1pm and Tuesday after 2:30.

**MONICA N. HUNT**
**Partner**



O: (313) 871-5500 ext. 104

3031 W. Grand Blvd., Suite 525, Detroit, MI 48202

**mhunt@alglawpc.com**

Important: This electronic mail communication from The Allen Law Group, PC is confidential and may be legally privileged. It is for use by the intended recipient(s) only. If you are not an intended recipient, you are hereby notified that the use, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately and delete the communication. Thank you.

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE ROBERT D. STEWART COMPANY
d/b/a THE STEWART COMPANY,
a California corporation,

        Plaintiff,

v.

FIRST BRANDS GROUP, LLC,
a Delaware limited liability company, and
HORIZON GLOBAL AMERICAS INC.,
a Delaware corporation

        Defendants.

Case No.:  23- cv-11765
Hon. Stephen J. Murphy, III
Magistrate Judge Elizabeth A. Stafford

---

| STROBL PLLC | THE ALLEN LAW GROUP |
|---|---|
| Henry J. Andries, Jr. (P53669) | Natasha Rao (P85102) |
| Michael L. Geller (P42862) | Monica Hunt (P68838) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 33 Bloomfield Hills Pkwy., Ste. 125 | 3031 W. Grand Blvd. |
| Bloomfield Hills, MI  48304 | Detroit, MI  48202-3046 |
| (248) 540-2300 | Telephone: (313) 961-0200 |
| handries@strobllaw.com | nrao@alglawpc.com |
| mgeller@strobllaw.com | mhunt@alglawpc.com |

---

To:  Eric Scheible, Special Master
     Counsel of Record

**REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFF'S SUMMARY REPORT TO SPECIAL MASTER**

1

Defendants in their Response assert that they "have produced the available invoices, purchase orders, and remittance payments that have been made accessible through the available technology . . . Defendants are unable to retrieve documentation that is not stored and saved within their possession. Defendants have provided all information that they have available to them." (Defs' Response, pp. 3-4). Defendants' assertion is not supported by the record. As set forth in Plaintiff's Summary Report with supporting exhibits, Defendants have produced invoices through December 31, 2024, but not the majority of payment remittance records. (Plaintiff's **Exhibit C**, Affidavit of Jason Wells, ¶ 6). They also have not produced basic accounts receivable reports (*e.g.* monthly and annually) maintained in the ordinary course of business documenting payments received from each OEM customer.

Jospeh Salvia testified that the company maintains daily and monthly accounts receivable reports documenting payments received from customers inputted from the cash log report "which is a report of all the payment remittances from the customer." (Plaintiff's **Exhibit F**, Salvia Dep, pp. 10-16). The excel spreadsheets produced on January 24, 2024, and titled "ME aging for StewCo customers"; "Warren Distribution Subledger"; and "Other Customers Subledger" were created by Defendants and did not include the actual accounts receivable reports maintained in the ordinary course of business. (**Exhibit A**, 1/24/24 email). The actual monthly payment remittance records and monthly accounts receivable reports should not be voluminous or difficult to produce. Attached as **Exhibit B** are samples of payment remittance records produced to date.

Records documenting payments received from customers and maintained in the ordinary course of business are directly relevant to the issue of and amount of damages, since commissions are calculated based on payments received from customers pursuant to Section 6 of the Agreement.

2

Plaintiff maintains that Defendants have not produced such relevant records in order to prevent the accurate calculation of actual commissions based on the invoiced sales.

Defendants' Response also confirms that Defendants failed to preserve relevant evidence in anticipation of and during litigation.  A party has a duty to preserve evidence for litigation "when that party has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation." *Prudential Def. Sols., Inc. v. Graham*, 2021 U.S. Dist. LEXIS 198699 (E.D. Mich. 2021), citing *John B. v. Goetz, 531 F.3d 448, 459 (6th Cir. 2008)*; *Fed. R. Civ. P. 37(e)* Advisory Comm. Notes (2015) (explaining that *Rule 37(e)* applies where the "lost information should have been preserved in the anticipation or conduct of litigation," which "is based on [the] common-law duty" that requires "potential litigants . . . to preserve relevant information when litigation is reasonably foreseeable").  It belies credibility that a publicly traded company at the time of the February 2023 acquisition and doing over $550 million in sales (over $200 million domestically) did not save and store records maintained in the ordinary course of business, particularly when Defendants had notice of potential litigation as early as February 20, 2023, when counsel for Plaintiff informed them of the improper termination in breach of the agreement and obligation to pay commissions on program sales through December 2028.  (**Exhibit C**, 2/20/25 correspondence).

Moreover, Defendants do not identify which records they have not "saved" or "stored" due to purported technology issues, and Mr. Savia testified that HGA has monthly accounts receivable reports maintained in the ordinary course of business.  The remaining unproduced purchase order, payment remittance, financial statement and accounts receivable report records are unequivocally within the proper scope of discovery and subject to production by any objective measure. Accordingly, Plaintiff respectfully requests the special master to recommend the Court (a) order

the production of such records pursuant to the Federal Rules of Civil Procedure; (b) order

Defendants to identify which records have not been "saved" and "stored" by Defendants; and (c)

order an evidentiary hearing related to such records.

Respectfully submitted,

**STROBL PLLC**

By: _/s/  Henry J. Andries, Jr._
Henry J. Andries, Jr. (P53669)
*Attorney for Plaintiff*
33 Bloomfield Hills Parkway, Ste. 125
Bloomfield Hills, MI  48304
(248) 540-2300

Dated:  May 9, 2025

*S&B\112175\001\MISC\SB906826.DOCX

# EXHIBIT A

## Hank Andries

| | |
|---|---|
| **From:** | Monica Hunt <mhunt@alglawpc.com> |
| **Sent:** | Friday, January 24, 2025 6:16 PM |
| **To:** | Hank Andries |
| **Cc:** | es@frascap.com; Natasha  Rao |
| **Subject:** | The Stewart Company v First Brands - Production of Documents |
| **Attachments:** | ME agings for StewCo customers.xlsx; Warren Distribution Subledger.XLSX; Other Customers Subledger.XLSX |

Good Evening,

Attached, you will find the data reviewed by Jos Salvia of First Brands, which was utilized to generate the document Bates Stamped HGA 452. As you can see in the accompanying spreadsheet titled "Other Customer Subledgers", this data encompasses over 15,000 documents, making the task of retrieving all of them quite extensive.

To streamline the process and alleviate the burden on both First Brands and the Stewart Company, I propose that the Plaintiff audit specific sections of the data. The Plaintiff can specify the desired time frame or particular invoices for review, and First Brands will locate and forward the associated documents.

While I acknowledge that this approach may not be ideal, the substantial time and resources required to generate and download all 15,000 documents lead us to believe this method would be the most efficient way to obtain and verify the requested information.



THE
ALLEN
LAW
GROUP PC

**Monica N. Hunt, Esq.**
**The Allen Law Group, P.C.**
3031 West Grand Boulevard
Suite 525
Detroit, Michigan 48202
Phone: (313) 871-5500 ext. 104 | Fax: (313) 871-0517
Email: mhunt@alglawpc.com | Website: www.alglawpc.com

*Please note: This electronic mail communication is from The Allen Law Group, PC is confidential and may be legally privileged. It is for use by the intended recipient(s) only. If you are not an intended recipient, you are hereby notified that the use, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately and delete the communication. Thank you.*

1

# EXHIBIT B

## Hank Andries

| | |
|---|---|
| **From:** | Hank Andries |
| **Sent:** | Tuesday, March 04, 2025 7:41 PM |
| **To:** | Eric Scheible; Monica Hunt |
| **Cc:** | Natasha  Rao; Denise Smith |
| **Subject:** | FW: Stewart Co v First Brands - Accounting Documents |
| **Attachments:** | Mazda Remittance Advice Communication 01-13-2024[1][2] (SB897876xB7BE6).pdf; paymentRecord_0BNBLC01 (SB897878xB7BE6).pdf |

My email below inadvertently omitted the word "not" from the following sentence:  "But it did **not** include such records for the following customers and sub-customers:"  Please excuse the typo.  Thanks, Hank

- Honda
- FCA
- Flex N Gate
- Ground Effects
- Mobis
- Subaru
- Tesla
- Warren
- Toyota
- Toyota Motor MFG, BC
- Toyota Motor MFG. TMMGT
- Toyota Canada Inc.
- Toyota Motor MFG Indiana
- Toyota Motor Eng & MFG North America

Hank

*The information contained in this e-mail is CONFIDENTIAL, subject to attorney-client privilege or constitutes privileged work product. The information is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any use, dissemination, disclosure, copying, distribution, or other use of the information contained herein (including any reliance thereon) is not authorized and is STRICTLY PROHIBITED. If you received this e-mail in error, please immediately contact the sender and destroy the material in its entirety. Thank you.*

**From:** Hank Andries
**Sent:** Tuesday, March 04, 2025 7:37 PM
**To:** Eric Scheible <es@frascap.com>; Monica Hunt <mhunt@alglawpc.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: Stewart Co v First Brands - Accounting Documents

Thanks for the zoom meeting this afternoon.  As discussed, the production included only payment remittance/advice records for Mazda and Nissan (see attached examples, for Eric's reference).  But it did include such records for the following customers and sub-customers:

- Honda
- FCA

1

- Flex N Gate
- Ground Effects
- Mobis
- Subaru
- Tesla
- Warren
- Toyota
- Toyota Motor MFG, BC
- Toyota Motor MFG. TMMGT
- Toyota Canada Inc.
- Toyota Motor MFG Indiana
- Toyota Motor Eng & MFG North America

Hank



**Henry J. Andries, Jr.**

**Strobl PLLC**

33 Bloomfield Hills Parkway | Suite 125
Bloomfield Hills, MI 48304-2936
Email: handries@strobllaw.com
Website:  www.strobllaw.com
Direct:  248.205.2710
Main:   248.540.2300
Fax:    248.645.2690

*The information contained in this e-mail is CONFIDENTIAL, subject to attorney-client privilege or constitutes privileged work product. The information is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any use, dissemination, disclosure, copying, distribution, or other use of the information contained herein (including any reliance thereon) is not authorized and is STRICTLY PROHIBITED. If you received this e-mail in error, please immediately contact the sender and destroy the material in its entirety. Thank you.*

**From:** Eric Scheible <es@frascap.com>
**Sent:** Friday, February 28, 2025 5:38 PM
**To:** Hank Andries <handries@strobllaw.com>; Monica Hunt <mhunt@alglawpc.com>
**Cc:** Natasha Rao <nrao@alglawpc.com>; Denise Smith <ds@frascap.com>
**Subject:** RE: Stewart Co v First Brands - Accounting Documents

Thanks, all. Invite just sent. Have a great weekend.

Eric Scheible
Frasco Caponigro
Wineman Scheible Hauser Luttmann PLLC
1301 West Long Lake Road
Suite 250
Troy, Michigan  48098
248.334.6767 (o)
248.420.2090 (m)
es@frascap.com
frascap.com

Mazda Canada Inc
55 Vogell Rd Richmond Hill, ON L4B 3K5

CEQUENT TOWING PRODUCTS OF CANADA
DEPT 410163
P.O. BOX 4375, STATION A
TORONTO ON   M5W 0J3

**Payment advice**

Document / Date
2000031681 / 01/13/2024

Your account with us
111855

Dear Sir/Madam,

We have cleared the items listed below with document 2000031681.

Kind regards

| Document | Reference | Date | Deductions | Gross amount |
|---|---|---|---|---|
| 1003277236 | 90273628 | 12/07/2023 | 0.00 | 3,998.28 |
| 1003277237 | 90273629 | 12/07/2023 | 0.00 | 2,633.02 |
| Sum total | | | 0.00 | 6,631.30 |

| Payment document | Date | Currency | Payment amount |
|---|---|---|---|
| 2000031681 | 01/13/2024 | USD | *********6,631.30* |

** Please do not reply to this email as it is automatically created and not monitored for incoming email. **

## Rich Remittance™ - Nissan

| | | | | |
|---|---|---|---|---|
| **Reference** | 0BNBLC01 | | **Customer** | Nissan |
| **Payment Method** | ACH | | **Business Unit** | Nissan North America, Inc (2177) |
| **Pay Date** | Jan 30, 2024 | | **Supplier Name** | HORIZON GLOBAL AMERICAS INC |
| **Payment Total** | $54,665.53 | | **Supplier Number** | 0001643100 |
| **Total Interest Charge** | $924.74 | | | |
| **Currency** | USD (US Dollar) | | | |

Invoices and credit notes included in this payment

| # | Invoice Number | Type | Document Date | Document Amnt | Interest Charge | Payment Amnt | Comments |
|---|---|---|---|---|---|---|---|
| 1 | 0000336777 | Invoice | Jan 26, 2024 | $4,367.69 | $113.20 | $4,254.49 | |
| 2 | 0000333718 | Invoice | Jan 25, 2024 | $4,367.69 | $113.22 | $4,254.47 | |
| 3 | 0000333719 | Invoice | Jan 25, 2024 | $4,367.69 | $113.22 | $4,254.47 | |
| 4 | CK38769-4BAIZA | Invoice | Dec 30, 2023 | $42,487.20 | $585.10 | $41,902.10 | |

# EXHIBIT C

| | |
|---|---|
| **From:** | Curtice Booth <curt@stewco.com> |
| **Sent:** | Monday, February 20, 2023 10:57 PM |
| **To:** | Salvatore Miscio |
| **Cc:** | Jason Wells |
| **Subject:** | Re: Horizon Rep Agency Termination |
| **Attachments:** | TSC Letter to Horizon re Termination 2.20.2023[1].pdf; Ex A to Letter - Signed Agreement[1].pdf; Ex B to Letter - Spreadsheet and Email[1].pdf; Stewart Company Agency Termination  - Horizon - Rev[5].pdf |

Dear Mr. Miscio,

I received Mr. Flemings's notice to terminate the Horizon Global Americas agreement with The Stewart Company.

There has not been any communication from the First Brands sales team since receipt of the letter.  In the meantime, please see our attached response with attachments.  Kindly let me know when you would like to discuss this matter.

Sincerely,

Curtice Booth
The Stewart Company
Cell (310) 351-5075
curt@stewco.com


**From:** Salvatore Miscio <salvatore.miscio@FirstBrandsGroup.com>
**Date:** Monday, February 13, 2023 at 2:16 PM
**To:** Curtice Booth <curt@stewco.com>
**Subject:** Horizon Rep Agency Termination

Hello Curtice,

As you are aware Horizon Global Americas Inc has been acquired by First Brands Group, LLC.  As part of the transition, First Brands Group has decided to terminate its sales representative agreement with your company.

Please find attached the letter of termination.

If you have questions after reading the attachment, please do not hesitate to contact me.


All the best,

1

TSC000038
CONFIDENTIAL

Salvatore

Salvatore Miscio
Mobile: (734)430-6581
salvatore.miscio@firstbrandsgroup.com



**From:** Salvatore Miscio
**Sent:** Monday, February 13, 2023 5:06 PM
**To:** 'tim@spurgeonassociates.com' <tim@spurgeonassociates.com>
**Subject:** Horizon Rep Agency Termination

Hello Tim,

As you are aware Horizon Global Americas Inc has been acquired by First Brands Group, LLC.   As part of the transition, First Brands Group has decided to terminate its sales representative agreement with your company.

Please find attached the letter of termination.

If you have questions after reading the attachment, please do not hesitate to contact me.


Salvatore

Salvatore Miscio
Mobile: (734)430-6581
salvatore.miscio@firstbrandsgroup.com

2

TSC000039
CONFIDENTIAL

**THE STEWART COMPANY**
3780 Kilroy Airport Way, Suite 550
Long Beach, CA 90806

February 20, 2023

VIA FedEx and Email

Richard W. Fleming,
Chief Commercial Officer
Horizon Global Americas Inc.
47912 Halyard Drive, Suite 100
Plymouth, Ml 48170

Re:   The Stewart Company/Horizon

Dear Richard:

I write on behalf of The Stewart Company ("TSC"). We are in receipt of your letter, sent via email, dated February 13, 2023. That letter states that Horizon Global Americans Inc. ("Horizon") is terminating the Sales Representative Agreement between Horizon and TSC "Pursuant to section 7(b) of the Representation Agreement."

The operative agreement between our companies is attached as Exhibit A (the "Agreement") (dated July 26, 2022). Your reference, in the February 13 letter, to "section 7(b)" of the agreement does not appear to refer to the Agreement between our companies; we do not understand the meaning of this reference, or what you might understand it to mean.

Under Section 8 and Schedule 2(C) of the Agreement, the earliest possible effective date of a valid notice of termination from Horizon is December 31, 2027, and TSC is entitled to full commissions on all programs through at least December 31, 2028.

The Initial Term of the Agreement ends on December 31, 2025, and is followed automatically by successive two-year Renewal Terms. See ¶ 8.1 (capitalized terms have the meaning set forth in the agreement). There is no right to terminate TSC without cause during the Initial Term, although such termination is allowed during the first Renewal Term, "in which case the effective date of such Termination [is] the end of the then-current Renewal Term"—which is, at the earliest, December 31, 2027. ¶ 8.2(c).

TSC000040
CONFIDENTIAL

**THE STEWART COMPANY**
3780 Kilroy Airport Way, Suite 550
Long Beach, CA 90806

Under Schedule 2(C)(a) of the Agreement, TSC is entitled to full "Commissions on all sales under all Programs for Products that are received, accepted, and shipped by Supplier prior to the close of business on the effective date of the termination of this Agreement. Termination is governed by Section 8 of this Agreement." TSC then is entitled to post-termination commissions for a minimum of 12 months following the effective date of termination, depending on the Program and other details set forth in Sections (b)-(c) of Schedule 2(C). Thus, TSC is entitled to full commissions through at least December 31, 2028.

Under Paragraph 4.6 of the Agreement, Horizon is obligated to provide TSC with monthly reports. Unfortunately, Horizon hasn't done so since August 11, 2022.

Furthermore, as you know, Horizon has been in arrears to TSC in the amount of approximately $406,414 through the end of 2022, as reflected in the spreadsheet included with Exhibit B (dated January 12, 2023). This is based on our best understanding, given Horizon's failure to provide the aforesaid reports.

We appreciate your suggestion, in your February 13 letter, that we get in touch with one another "in the near future to discuss the orderly wind-up and transition of [our] services, the calculation of commissions due," etc. In advance of that discussion, TSC needs to receive the current reports. Please let me know when we can expect those reports, and when you would like to have the discussion following that concerning termination.

We reserve all rights and remedies with regard to this matter, and nothing herein should be interpreted as a waiver of any rights, remedies, or positions.

Sincerely,

By:  Curtice Booth
     President

TSC000041
CONFIDENTIAL